## METZGER v. WESTERN MARYLAND RY. CO.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2786.

Isaac L. Straus, of Baltimore, Md., for appellant.

Morton K. Rothschild, of Baltimore, Md. (George P. Bagby, of Baltimore Md., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

PARKER, Circuit Judge. This was a suit instituted in the court below by the plaintiff, Frederick W. Metzger, against the Western Maryland Railway Company, to recover damages for personal injuries under the Federal Employers' Liability Act (45 USCA §§ 51–59). The lower court sustained a demurrer to the amended declaration, and plaintiff appealed. We shall refer to the parties in accordance with the positions occupied by them below.

██ The facts, as set forth in the amended declaration, are as follows: Plaintiff was a carpenter employed by defendant to repair and keep in repair its grain elevator used in interstate and foreign commerce at Baltimore, Md. While so engaged he sustained an injury to his left knee. He was thereupon ordered by the foreman in charge of the work to report for treatment to defendant's physician and surgeon, which he did on the following day. The allegation is that the physician was guilty of negligence in examining the injured limb, diagnosing the injury and prescribing treatment therefor, and that this negligence resulted in so aggravating the condition of the injured limb as to necessitate its amputation. Damage is claimed not on account of the original injury, but solely on account of the negligence of the physician.

We think that the demurrer was properly sustained. The action was instituted under the Federal Employers' Liability Act (45 USCA § 51), and it is perfectly clear that the declaration did not state a cause of action thereunder for three reasons: (1) Because the defendant, in furnishing medical attention to an injured employee, was not engaged in interstate commerce; (2) because the employee, in seeking and accepting treatment for his injury, was not engaged in such commerce; and (3) because the physician, in advising and treating the employee, was not an "officer, agent or employee" of the defendant within the meaning of the act.

In determining whether plaintiff or defendant was engaged in interstate commerce at the time of the injury complained of, it is not sufficient to inquire generally whether the defendant was engaged in such commerce, or whether plaintiff's employment on other occasions related thereto. The question is: Was defendant, in furnishing medical treatment to plaintiff, and was plaintiff, in seeking and accepting such treatment, engaged in interstate commerce within the meaning of the act? As said by the Supreme Court in Shanks v. D., L. & W. R. Co., 239 U. S. 556, 558, 36 S. Ct. 188, 189 (60 L. Ed. 436, L. R. A. 1916C, 797), "What his employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered."

It would seem to be too clear for argument that consultation with a physician by an injured employee, and advice and treatment of such employee by the physician, do not constitute engaging in interstate commerce within the meaning of the act. The

treatment of the injury is not an act in furtherance of or incidental to interstate commerce. It is an act in furtherance of the health of the employee. The health of the employee may be of benefit to interstate commerce, if he remains in the service of the employer; but the connection is entirely too speculative and remote to form the basis of an action under the statute. Shanks v. D., L. & W. R. Co., supra; Erie R. Co. v. Welsh, 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319; Ill. C. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; D., L. & W. R. Co. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; Ill. Cent. R. Co. v. Cousins, 241 U. S. 641, 36 S. Ct. 446, 60 L. Ed. 1216.

And we think, also, that defendant is not liable under the statute for the negligence of the physician, for the reason that the physician is not an "officer, agent or employee," for whose negligence the company is made liable. He is obviously not an officer or agent; but, as he is employed by the company to treat its employees, the question arises whether such employment does not constitute him an employee. We think not. The word "employee" is used in the statute to designate one within the relationship of master and servant, one whose work is subject to the order and control of the company, not an independent contractor or a physician, who exercises his own judgment free from the company's control or supervision. C., R. I. & P. R. Co. v. Bond, 240 U. S. 449, 36 S. Ct. 403, 60 L. Ed. 735. And see Quinn v. Kansas, etc., R. Co., 94 Tenn. 713, 30 S. W. 1036, 28 L. R. A. 552, 45 Am. St. Rep. 767; Union Pac. R. Co. v. Artist (C. C. A. 8th) 60 F. 365; Pearl v. West End Street Ry. Co., 176 Mass. 177, 57 N. E. 339, 49 L. R. A. 826, 79 Am. St. Rep. 302 (opinion by Holmes, C. J.); Powers v. Mass. Hom. Hospital (C. C. A. 1st) 109 F. 294, 298 (65 L. R. A. 372); Ill. Cent. R. Co. v. Moodie (C. C. A. 5th) 23 F.(2d) 902.

As bearing upon the status of a physician employed by a company to treat its employees, it was said in the Quinn Case, supra:

"If it be, as these authorities indicate (and it cannot be otherwise), that the decisive test of this relationship, or even one of its decisive tests, is that the master has the right to select the mode of the servant's employment, and that the master's uncontrolled will is the law of the servant 'in the means and methods' by which this end is to be reached, then it cannot be maintained that these surgeons were the 'servants' of this corporation. They were not employed to do ordinary corporate work, but to render services requiring special training, skill, and experience. To perform these services so as to make them effectual for the saving of life or limb, it was necessary that these surgeons should bring to their work not only their best skill, but the right to exercise it in accordance with their soundest judgment and without interference. Not only was this the right of these surgeons, but it was as well a duty that the law imposed. If the railroad authorities had undertaken to direct them as to the method of treatment of the injured man, and this method was regarded by them as unwise, they would have been 'bound to exercise their own superior skill and better judgment and to disobey their employers, if in their opinion the welfare of the patient required it.'"

And in the Powers Case, supra, Judge Lowell said:

"There is another class of cases in which the courts of this country have held that a railroad company, having in its regular employ physicians and surgeons whose duty to the corporation requires them to care for the sick and injured among the corporation's employés, is not liable to those employés for the malpractice or other negligence of these medical men. [Citing cases.] The obligation of the railroad has been said to extend no further than the employment of doctors competent to do the work proposed. It has also been said that the doctor is not the servant of the corporation, for the reason that, in treating the patient, he does not take his orders from the corporation, but is guided altogether by his own judgment. 'The relation of master and servant exists only between persons of whom the one has the order and control of the work done by the other. A master is one who not only prescribes to the workman the end of his work, but directs, or at any moment may direct, the means also, or, as it has been put, retains the power of controlling the work; and he who does work on those terms is in law a servant, for whose acts, neglects, and defaults, to the extent to be specified, the master is liable.' Pol. Torts (4th Ed.) p. 72."

There was no error, and the judgment of the District Court is affirmed.

Affirmed.