## EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited, v. BELL.

### No. 4983.

Circuit Court of Appeals, Third Circuit.

March 3, 1933.

Alfred E. Driscoll and Starr, Summerill & Lloyd, all of Camden, N. J., for appellant.

James Mercer Davis, of Camden, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case it appears that John J. Bell, an employee of the United Cigar Stores Company, suffered, in the course of work, a fracture of his leg. The manager of that company at once sent him to the Episcopal Hospital of Philadelphia, where he was treated for some weeks at the charge of the United Cigar Stores Company's insurance company, a defendant in this case. We here remark that the United Cigar Stores Company was joined as a defendant in the suit hereafter referred to, and was charged with negligence in causing such injury. On the trial there was no proof of that company's negligence, a nonsuit was granted, and it disappears from our consideration further than to say it made due compensation to Bell under the Workmen's Compensation Law.

It appears, however, that the Employers' Liability Assurance Company, Limited, had issued an accident policy on Bell to the United Cigar Stores Company and was liable thereon and interested in lessening the injury sustained by Bell in the accident; the policy providing it would furnish reasonable surgery and medical services, medicine, and supplies as and when needed. With that end in view, the insurance company, after Bell had been treated for several weeks at the Episcopal Hospital, and where his case was proceeding favorably, desired to have him removed to a private hospital of its selection, and be there treated by a physician of its own choice, where the expense to the insurance company was materially less than it was paying at the Episcopal institution. The insurance company was also pecuniarily interested in having Bell restored to health. Bell objected to the removal, but, on the insistence of the insurance company, consented thereto. He was removed by nurses, attendants, and ambulance sent by the latter. He was first taken to the offices of the insurance

954

company, which were equipped with X-ray facilities. Here X-rays were taken, which gave the information on which his subsequent treatment was based.

The proofs tended to show, and Bell's contention was, that during the time he was thereafter in the hospital, and without his knowledge or consent, his leg was broken by the surgeon in charge, while he was unconscious. That with the knowledge of the insurance company's representative he was kept in ignorance of what had been done, and his contention was that, in order to continue keeping him thus in ignorance, no plaster cast was put on his leg, nor were there any extension weights used thereon; things which it was testified were necessary to proper treatment. The proofs further tended to show that due thereto his leg was shortened an inch and a half, that it was badly bowed, and that permanent pain, and possibly curvature of the spine, would ensue therefrom. We here note the contention, that there was a second breaking of the leg, is based solely on testimony as to what is disclosed by the X-rays; overlooks entirely the additional testimony that at the second hospital the manager of the insurance company's department that had Bell's case in charge was heard to say: "What will Bell say if he finds out that we put the cast on? He will know then that his leg has been broken."

At the trial the judge instructed the jurors that they had nothing whatever to do with the original injury to Bell and the damage caused thereby, and that their duty was, under the proofs, twofold: First, to ascertain whether the doctor selected by the insurance company was guilty of negligence in thereafter treating Bell; and, secondly, whether, if so, the doctor was an independent contractor or the agent of the insurance company. Both questions the judge carefully and fully explained to the jury in terms to which no exception was taken, and the verdict is conclusive, if there was evidence from which the jury might find negligence on the part of the surgeon, and that he was the agent of the insurance company. The case therefore narrows down to whether there was evidence from which negligence of the doctor, and whether he was the insurance company's agent, could be found.

As to the negligence of the physician, there was testimony which, if believed, showed negligence on the part of the doctor selected by the insurance company which resulted in the shortening of Bell's leg, and the consequent results. As to his agency, the defendant's position is that a doctor by reason of his profession cannot in any case become an agent. The plaintiff's position, as well as that of the trial court, is that, though ordinarily the doctor is by reason of his profession an independent contractor, he may, if the facts prove it, become an agent, particularly when he submits to control and supervision by his employer in treating a patient. Metzger v. Western Maryland R. Co. (C. C. A.) 30 F.(2d) 50, 51. Moreover, we have the fact that the plaintiff had no contractual relation to the doctor whatever; in fact, did not know him, had not heard of him, did not select him, pay him, or consult him as to treatment. On the contrary, he was selected, employed, and paid by the insurance company with a view to lessening its financial responsibility by surgical treatment, and meanwhile to subject itself to less expense than it was incurring at the first hospital, where he was being treated. So, also, the proof of concealment by the company of the plaintiff's injury resulting from the alleged malpractice is evidence of its concurrence with, and control over, the doctor. From such facts and others that might be cited, we think the questions of negligence and agency were for the jury to pass upon.

[3] To this we may add that the verdict in this case was, as the court charged, restricted to the damages suffered by the plaintiff after he left the first hospital and was in the second one, and to those injuries resulting from the negligence of the doctor in charge of such second hospital. It is clear, therefore, that the fact that the plaintiff had received compensation for the original injury did not preclude him from recovering damages for a subsequent tort.

The judgment below is affirmed.