**O'DONNELL**

v.

**PENNSYLVANIA R. CO.**

United States District Court
S. D. New York.

July 21, 1954.

Leo Gitlen, New York City, and Richter, Lord & Farrage, Philadelphia, Pa., for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant.

EDELSTEIN, District Judge.

Defendant railroad moves for a new trial in each of two separate causes tried under the Federal Employers' Liability Act. The first cause of action went to the jury on damages only, liability being admitted. Serious back injury was testified to, but the errors alleged relate to two quite minor injuries also claimed, an elbow injury and an injury to the inside of the left cheek. There is no doubt that the evidence on the elbow injury was inconsistent and

the medical testimony was weak. But I am convinced that the evidence was sufficient to go to the jury for a determination. The issue on the cheek injury is more troublesome, involving causal relationship. The plaintiff testified that he had a dental plate in his mouth which was broken, cutting his cheek. Subsequently, a lump in that area was surgically removed. No medical testimony was offered connecting the accident with the lump inside the cheek. There is no quarrel with the doctrine that expert medical testimony on causation is unnecessary when the disability complained of is the natural result of trauma. The perplexing problem is whether the appearance of a lump inside the cheek after an injury in that region is a natural phenomenon warranting an inference of causal relationship by the jury without the benefit of medical testimony. It is not completely analogous to the appearance of blood or a bruise or a broken bone after a blow. Nevertheless, though there may be valid differences of opinion, I am not convinced that the question is peculiarly one of medical involvement and the motion will be denied.

The second cause of action concerns a separate set of circumstances. The plaintiff was working as an engineman on a helper engine in the Philadelphia area. During the course of his duties, a foreign body got into his eye. Sometime later, an assistant road foreman, learning of the incident, instructed him to consult a doctor in the employ of the defendant, and accompanied him to the doctor's office. The jury, in answer to interrogatories submitted to them, found that the eye injury of which plaintiff complains was caused by the negligence of the doctor.

The defendant cites Metzger v. Western Maryland Ry. Co., 4 Cir., 30 F.2d 50, in support of his motion on the second cause of action. In that case it was held that a defendant railroad, in furnishing medical attention to an employee, and an employee, in "seeking and accepting treatment for his injury", were not engaged in interstate commerce; and that the physician, in advising and treating the injured employee was an independent contractor rather than an agent or employee of the defendant.

However, the Metzger case was decided prior to the 1939 amendment to the Federal Employers' Liability Act, 45 U.S.C.A. § 51, last paragraph. That amendment eliminated the "moment of injury" or the "pinpoint rule". Job v. Erie R. Co., D.C., 79 F.Supp. 698; Baird v. New York Central R. Co., 299 N.Y. 213, 86 N.E.2d 567. "In the light of this amendment it was not necessary for the plaintiff to show that either he or the defendant was engaged in the movement of an interstate shipment of freight at the very moment of the injury. The evidence clearly established that the defendant habitually participated in the movement of interstate shipments of freight and that the plaintiff customarily assisted as a locomotive fireman in those movements. The amended act requires no greater showing than this." Kach v. Monessen Southwestern Ry. Co., 3 Cir., 151 F.2d 400, 402. Cf. Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327.

Moreover, the injured employee's submission to examination and treatment was itself a duty in furtherance of interstate commerce and closely and substantially affected such commerce. Having been injured in the course of his duties as an engineman, he submitted to examination and treatment on the orders of his superior, not only for his own benefit (although there is evidence that he preferred to consult a doctor of his own choice instead) but for the benefit of the railroad, to determine his qualification to resume his duties in interstate commerce. Thus, he was doing something which was intended to lay the foundation for and to be in aid of subsequent acts of interstate commerce. It was distinctly in aid of the movement of transportation in interstate commerce, and not a separate activity unconnected with transportation and commerce.

The defendant strenuously urges the Metzger case as authority for the proposition that the railroad physician was, as a matter of law, an independent contractor, and that the defendant may be held responsible only for a lack of due care in selecting him. There was testimony that the physician was required in the course of his work to make his own medical decisions. But this is not a situation where the employer does not have the technical skill required to exercise control over the individual physician. The railroad maintained a complete medical staff including supervisory personnel. There was testimony that the doctor took general orders or instructions from superiors, that his superior might make recommendations or suggestions about medical treatment, and that if his superior saw him using poor medical technique he would "take exception" or ask him to stop. In other respects, there can be no doubt that the physician was an employee of the railroad. He had a social security number, a service record, a wage record disclosing the regular payment of periodic wages, and he worked regular hours. The plaintiff did not select the doctor himself; he was instructed to consult him, over his own objection. See Knox v. Ingalls Shipbuilding Corp., 5 Cir., 158 F.2d 973. The physician was selected, employed and paid by the defendant, with a view, in part, to lessening any possible liability it might incur, as demonstrated by the fact that the doctor sent a report to the claim agent, and also with a view, in part, to determining whether the plaintiff was qualified to continue to perform his duties in furtherance of the defendant's business. If any qualified physician can be an employee, this doctor was.

The defendant is actually contending, as a matter of law, that a doctor cannot be an employee because in the actual examination and treatment of a patient he must exercise his own medical judgment. It cannot be denied that ordinarily a doctor is by reason of his profession an independent contractor. But he may, if the facts prove it, become an agent, Employers' Liability Assur. Corp. v. Bell, 3 Cir., 63 F.2d 953. See Knox v. Ingalls Shipbuilding Corp., supra. Counsel have not cited nor have I discovered any case strictly in point. But De Zon v. American President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065, holding a shipowner liable for damages for harm suffered as a result of the negligence of a ship's doctor, is persuasive. That decision, it is true, is based upon the ancient duty of a ship to provide proper medical treatment for seamen falling ill or suffering injury in the service of the ship. But the Supreme Court pointed out that the doctor in treating the seaman was engaged in the shipowner's business, and that he was performing the service because the ship employed him to do so, not because the seaman did. I am constrained to disagree with the conclusion of law stated in the Metzger case, and to hold that a railroad may, under the Federal Employers' Liability Act, be liable for the negligence of a doctor in its employ, despite the fact that the doctor must inevitably exercise professional discretion in the examination and treatment of patients. In an individual case, it might be a question of fact for the jury to determine whether a physician's status was that of employee or independent contractor. But, the facts being undisputed, where the sole factor weighing in favor of the status of independent contractor is the doctor's professional discretion, and that to a minimum degree, to submit the issue to the jury would in effect be to ask them to determine as a matter of law whether a doctor can be an employee. I am persuaded that the doctor in this case was without a doubt an employee for whose negligence the defendant was responsible, and accordingly, the motion for a new trial in the second cause of action will be denied.