Walter DUNN, Plaintiff,

v.

CONEMAUGH & BLACK LICK RAILROAD, Defendant.

Civ. A. No. 13234.

United States District Court
W. D. Pennsylvania.

May 16, 1958.

Louis C. Glasso, Pittsburgh, Pa., for plaintiff.

Bruce R. Martin, of Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is an action under the Federal Employers' Liability Act to recover damages for injuries sustained while plaintiff was employed as a trackman for the Conemaugh and Black Lick Railroad. 45 U.S.C.A. § 51 et seq.

Upon jury trial verdict was returned in favor of plaintiff in the amount of $60,000.

The matters before the court are two-fold:

(1) Motion to set aside the verdict or for judgment notwithstanding the verdict.

(2) Motion for new trial.

### Motion to Set Aside the Verdict

The cause of action is predicated upon the thesis that defendant returned plaintiff back to work when it knew and/or should have known that he was not physically able to do the type of work assigned him. In support of his position, plaintiff produced testimony, viewed in a light most favorable to the plaintiff, establishing that he had undergone a serious operation for ulcers requiring a resection of two-thirds of his stomach on January 28, 1952. Before he could return to work, defendant required that he undergo a physical examination to be conducted by an examining physician who was deceased at time of trial. The examining physician of defendant certified him back to his regular employment to perform strenuous work as a trackman on February 28, 1952, in spite of request by the plaintiff's operating surgeon to defendant's personnel manager that he be given light work.

That plaintiff worked on March 3 and 4, 1952, at which time he complained to his superior of pain and reported to the dispensary. Nevertheless, defendant required plaintiff to perform strenuous work involving greasing and throwing switches, with the consequence that on March 21, 1952, while throwing a stiff switch, he experienced a sharp pain in the abdomen. That plaintiff as a result of his strenuous labors, in his weakened condition, between March 21, 1952 until June 2, 1952, suffered a swelling of the abdomen at the incisional area, accompanied by a ventral hernia. That he underwent two operations for the hernia on July 14 and July 28, 1952, at which time tantalum mesh was installed and was discharged with good healing on August 8, 1952. He was certified back to regular employment on October 8, 1952, and as a result of heavy work and the picking up of a rail on August 4, 1953, developed another hernia in the same incision, requiring surgery on September 4, 1953.

Medical testimony established that the ventral hernia was brought about by plaintiff's too early return to strenuous work and that the successive hernias resulted from the incisional wall having been weakened by the original stress of working on March 21, 1952 and until June 2, 1952, when he was finally advised to submit to repair.

That during this interval of strenuous work in spite of plaintiff's complaining to his foreman as to his physical weakness, defendant denied him light work pursuant to company policy of giving light work only to employees who had been injured while working and not to ailing or sick employees.

The view is advanced that an examining physician is an independent contractor and that even if said physician were guilty of negligence resulting in plaintiff's injury, that no liability can be fastened upon the Railroad and, in the alternative, argues that the court erred in submitting the question of whether said examining physician was an employee or independent contractor to the jury since the issue involves a question of law rather than fact.[1]

This Circuit has spoken with clarity on the proposition that where a plaintiff can prove that management forced a sick employee, of whose illness they knew or should have known, into work for which he was unfitted because of his condition, a case is made out for the jury under the Federal Employers' Liability Act. Nuttall v. Reading Co., 3 Cir., 235 F.2d 546. Whether or not a physician is acting as an employee for the Railroad if and when he has committed a negligent act is material in establishing negligent conduct on the part of the Railroad. Because of the crucial nature of the question, involving the sifting of conflicting and contradictory facts and inferences to be drawn therefrom, I relegated the issue of the relationship of the examining physician to the Railroad as a specific interrogatory for the jury's determination.

If the question is indigenous to an issue of law, it is my judgment that no prejudicial error could have resulted since during trial and again by way of reaffirmation, upon an evaluation of the testimony and the evidence I concluded, and I again conclude, that as a matter of law the examining physician at the time the divers examinations were made of the plaintiff and certification made as to his fitness to return to work, said examining physician was acting as defendant's employee.

In addition, I am satisfied that substantial evidence was produced to establish evidence of negligence not only on the part of the examining physician but also on the part of officials and servants of the defendant acting solely on behalf of the defendant. The record is replete with complaints by the plaintiff of his sick condition, the defendant's knowledge of his condition through its examining physician, and/or supervisory employees, and the assignment, nonetheless, of the plaintiff to strenuous work for which he was unfitted, predicated upon company policy refusing sick employees as distinguished from injured employees the benefit of light work.

Upon the evidence produced by the plaintiff and elicited from company medical witnesses and supervisory employees, the jury was well justified in its conclusion that defendant had failed to exercise due care in requiring plaintiff to perform heavy work in view of his weakened physical condition which was known and/or should have been known by defendant.

It is not plaintiff's burden, as defendant contends, that plaintiff was required to prove a case of malpractice against the examining physician. It is sufficient that defendant knew that plaintiff was unable to do hard work so soon after an operation both through its examining doctor and/or its foreman, and nevertheless ordered him back to work. Recovery, therefore, is premised upon negligence on the part of the defendant Railroad. Nuttall v. Reading Co., supra; Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490; O'Donnell v. Pennsylvania R. Co., D.C., 122 F. Supp. 899; Bascho v. Pennsylvania R. Co., 3 N.J.Super. 86, 65 A.2d 613.

I am satisfied that the evidence was sufficient to establish a reasonable inference that plaintiff was forced to return to work prematurely by reason of the fact that his benefits were cut off and the examining physician certified him back to work. The evidence produc-

---

1. The following interrogatory was submitted to the jury:
"Was the examining Doctor Carney an employee of the Railroad or an independent contractor?
"Answer: Employee of R.R."

ed the further inference that plaintiff's failure to return to the work assigned him at the time of his certification would have resulted in his dismissal.

Assuming that this court were in error in the conclusion that the negligence of an examining physician was attributable to defendant Railroad, I am satisfied that evidence of negligence on the part of supervisory employees acting in the course of their employment in carrying out defendant's policy of refusing light work to a sick employee as distinguished from an injured employee, in itself was sufficient to sustain the jury's finding of negligent conduct on the part of defendant.

■ A motion for a directed verdict or judgment notwithstanding the verdict under the Federal Rules raises a question of law only; Fed.Rules Civ.Proc. rule 50, 28 U.S.C.; that is, whether there is any evidence which, if believed, would authorize a verdict against the defendant, and the trial court in considering such motion does not exercise any discretion but makes only a ruling of law. Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498; Grayson v. Deal, D.C., 85 F.Supp. 431.

■■ The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury not the court which is the fact-finding body. It weighs the contradictory evidence and inferences, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions, or because judges feel that other results are more reasonable. Thomas v. Conemaugh & Black Lick R. Co., 3 Cir., 234 F.2d 429; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Masterson v.

Pennsylvania R. Co., 3 Cir., 182 F.2d 793.

I am satisfied that the record evinces sufficient credible evidence to support the findings of the jury. Motion to set aside the verdict or motion notwithstanding the verdict is refused.

## Motion for New Trial

Defendant filed timely motion for new trial assigning the following reasons:

1. The court erred in permitting Dr. Rosen and Dr. Kaufman to testify, over objection, as to how long they attempted to confine their post-operative patients to inactivity or light activity.

2. The court erred in permitting plaintiff's attorney to cross-examine defendant's witnesses, over objection, as to whether they had the right to do various things and as to whether they could have done certain things.

3. The court erred in various comments made in open court and in the hearing of the jury during the presentation of evidence and particularly with respect to whether Dr. Carney was an employee of defendant.

4. The court erred in asking defendant's witnesses if they could answer various questions to which defense counsel had objected and whether, if they could not answer, any other employee would be in a better position to answer.

5. The court erred in making facts stipulated to by counsel subject to modification or rejection by the jury on the basis of any inferences they might draw from other evidence.

6. The court erred in refusing to instruct the jury as requested in the First Point for Charge that the union officers and agents were plaintiff's representatives.

7. The court erred in refusing to instruct the jury as requested in the Second Point for Charge that defendant had the contractual obligation to furnish plaintiff employment in accordance with his seniority rights unless just cause existed

for discharging him or suspending him from the service.

8. The court erred in refusing to instruct the jury that by presenting himself for return to work plaintiff held himself out as physically able to resume work and to perform his ordinary duties. (Third Point)

9. The court erred in refusing to instruct the jury that by presenting Dr. Carney with his private physician's request that he be permitted to return to work plaintiff held himself out to be physically able to resume work. (Fourth Point)

10. The court erred in refusing to instruct the jury that the defendant neither forced nor even requested plaintiff to return to work. (Eleventh Point)

11. The court erred in refusing to instruct the jury that defendant was under no legal duty to provide plaintiff with either a medical examination or medical treatment. (Fifth Point)

12. The court erred in refusing to instruct the jury that the defendant could not be held liable for the negligence, if any, of the doctors who examined or treated plaintiff (Ninth Point), and in permitting the jury to find that Dr. Carney, the examining doctor, was an employee of defendant.

13. The court erred in refusing to instruct the jury that there was no evidence of negligence on the part of Dr. Carney. (Tenth Point)

14. The court erred in permitting the jury to find that defendant's employees were negligent in failing to substitute their judgment for that of professional medical men in solving the medical question of plaintiff's physical fitness to perform his ordinary duties.

15. The court erred in refusing to instruct the jury that any possible recovery was limited to damages incurred by plaintiff between March 21, 1952 and August 4, 1953 (Eighth Point) since plaintiff proved as part of his own case that the injuries incurred by plaintiff on and after August 4, 1953 were not proximately caused in whole or in part by the matters complained of in this complaint and since, if plaintiff had any rights against defendant arising therefrom, said rights constituted a separate cause of action for which no suit had been brought within the period allowed by the statute of limitations.

16. The verdict is grossly excessive.

17. The verdict is against the weight of the evidence.

18. The court erred in charging the jury as follows:

"Under this act of Congress, the test of liability of the railroad carrier is simply whether the proofs justify with reason the conclusion that the employer's negligence played any part, even in the slightest, in producing the injury for which damages are sought. It does not matter that from the evidence the jury may also with reason on grounds of probability attribute the result to other causes including the employee's contributory negligence."

For purposes of clarity, these points may be categorized into separate divisions:

Points One, Two, Three and Four relate to the court's rulings in connection with the relevancy of testimony and privilege of cross-examination where the court observed recalcitrant witnesses.

█ The court permitted medical experts to testify as to their post-operative policy in restricting the physical activity of their patients, since the crucial issue for jury determination concerned reasonableness of returning the plaintiff back to heavy work within a short period after undergoing major surgery.

█ Objection is made to the court's inquiry from one of defendant's witnesses as to the person in the corporate hierarchy who would have the information as to who assigned plaintiff to strenuous work. It is contended that such inquiry was prejudicial.

In the course of trial the court observed an extreme hesitancy and reluctance on the part of defense witnesses to bring

**330**

out information essential to aid the jury in resolving the crucial question of the person or persons responsible for assigning plaintiff to arduous work in his weakened condition. The court sought to elicit the name of defendant's employee who might answer the query in view of the repeated failure of any of defendant's witnesses to render an unequivocal answer in this connection.

I have always felt and have frequently reiterated that a presiding judge would prove derelict in his duty to the fair and impartial administration of justice were he to countenance a proceeding which left questions for the determination of a jury upon which known, available and relevant information was not produced to assist them in their deliberation.

I am satisfied that this court conducted the trial of this case with a sense of strict impartiality and fairness. A hotly contested case, as this one proved to be, inevitably aroused comment of the court or counsel, which isolated from context or devoid of the atmosphere or manner in which it was spoken, may raise doubts of propriety. Nevertheless, no comment in this record, when taken in the proper perspective and balance of the entire record could be deemed to have improperly influenced the jury, nor was any comment intended or calculated to do so. Conry v. Baltimore & O. R. Co., D.C., 112 F. Supp. 252, affirmed 3 Cir., 209 F.2d 422.

Point Five. The court at no instance set aside or directed the jury to disregard any stipulation of counsel, but left all facts and inferences deducible therefrom for the determination of the jury.

Points Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen are directed at the court's refusal to charge the jury as to specific facts or inferences. In order to maintain the strictest atmosphere of impartiality, I have always abstained from any discussion in the court's charge of the facts and inferences which the jury might draw from them. I am constantly aware of the inherent danger arising in connection with a discussion of facts that either by reason of emphasis or intonation a jury might infer that a judge places greater emphasis upon certain facts as distinguished from others, and such jury might attempt to render findings based on views which it believes to be those of the trial judge rather than its own. For this court to have expounded the conclusions requested by defendant in its points for charge, would have usurped the function of the jury, and in many respects substituted the court as the fact-finding body in lieu of the jury.

Point Fifteen is directed at the proposition that the court erred in failing to confine plaintiff's claim for damages to the period between March 21, 1952 and August 4, 1953, since injuries incurred by plaintiff on and after August 4, 1953 constituted separate torts. The jury could well have inferred from the preponderance or the weight of all the credible evidence that plaintiff's injury sustained subsequent to August 4, 1953 was not the result of separate torts but constituted consequential damage from the original tort. The law is settled that if a second accident is caused by a weakened condition due to the original accident, the second injury may properly be referred back to the original injury. Nikisher v. Benninger, 377 Pa. 564, 105 A.2d 281; Bender v. Welsh, 344 Pa. 392, 25 A.2d 182; Restatement of the Law of Torts, Sections 459 and 460. The record fully supports the conclusion that the successive hernias were caused by stress upon the previously weakened incisional wall, resulting from plaintiff's premature return to work on March 19, 1952. Further, that the hernias following the repair in July of 1952 were not caused by separate acts of negligence of the defendant but were due to the original injury, and that the present ventral hernia developed without any overt trauma but was attributable to the weakened condition by a too early return to work on March 15, 1952.

Points Sixteen and Seventeen raise the issue of excessiveness and contend that

the verdict is against the weight of the evidence.

▮ Plaintiff sustained a ventral hernia, requiring three distinct operations and necessitating the installation of tantalum mesh. He presently has a large ventral hernia approximately the size of a grapefruit. Because of the deteriorated condition of plaintiff's abdominal wall and the attendant dangers, surgery is not recommended. Pain, suffering and inconvenience of a most substantial nature has existed and will continue to one degree or the other as long as the plaintiff lives. It is undisputed that plaintiff is unfit to engage in heavy industrial work. Plaintiff was forty-two years of age at time of trial with a life expectancy of 31.4 years. Based upon the medical prognosis and the attendant circumstances surrounding plaintiff's condition, together with an evaluation of plaintiff's limited education and training, a jury well might conclude that plaintiff within the near future may prove unemployable with a potential loss of future earnings approximating $160,000. Pain, suffering, inconvenience and disfigurement, and their accompanying impact upon the psychological make-up and perspective upon plaintiff's life is appalling.

▮ Permissible differences in arriving at verdicts must be allowed between juries. The economics of the situation in the period involved should be considered. The amount of the verdict must be viewed in the light of what it is capable of purchasing.

I cannot conclude, in view of the extraordinary trauma which plaintiff endured, that an award of $60,000 is excessive and shocks the conscience of the court, or that it appears that the jury was biased or acted capriciously or unreasonably. Thomas v. Conemaugh & Black Lick R. Co., supra.

▮ As this Circuit has frequently reiterated, while an award may be high, it should stand if there is ample evidence to justify it. It is not my prerogative to arbitrarily substitute my judgment for that of the jury. Trowbridge v. Abrasive Co. of Phila., 3 Cir., 190 F.2d 825; Lebeck v. William A. Jarvis, Inc., 3 Cir., 250 F.2d 285.

In Point Eighteen it is contended that the court erred in its charge on the test of liability.

▮ It is most significant that the defendant has selected an isolated excerpt from the court's charge. The charge must be considered as a whole with a view of determining the impression conveyed thereby to the jury, and determining whether the charge was misleading. McLeod v. Union Barge Line Co., D.C., 95 F.Supp. 366, affirmed 3 Cir., 189 F.2d 610. A detailed reading of the entire charge will disclose that the court reviewed in great detail negligence, causal relationship, proximate cause and contributory negligence, and most assiduously advised the jury of plaintiff's burden of proof both as to negligence and causation.

The excerpt of the charge to which defendant objects is an identical statement of the latest expression by the Supreme Court of the United States as to the basis of liability under the Federal Employers' Liability Act. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

Judge Hastie, in a most learned opinion, has indicated that the quoted language merely reiterates the commonly accepted rule of law that the role of a defendant's negligence in helping bring about the injury may be small. It does not suggest that an FELA plaintiff can carry his burden of proof without evidence that the role was real. Dessi v. Pennsylvania Railroad Co., 3 Cir., 251 F.2d 149.

In considering the instant motion for new trial, I have evaluated the complete record and exhibits with meticulous care. I have carefully scrutinized the testimony, and I am satisfied that it is consistent, coherent and logically sound, and, indeed, creates such inferences from which the jury could have reasonably concluded the negligent conduct of the defendant.

It is my considered judgment that the verdict rendered was not against the evidence, weight of the evidence, or the law.

After again applying most reflected judgment to the record, I believe that under all the credible evidence justice sustains plaintiff's right to recover in the amount of $60,000.

An appropriate order is entered.