Walter DUNN, Appellee,

v.

CONEMAUGH & BLACK LICK RAILROAD, Appellant.

No. 12688.

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1959.

Decided May 28, 1959.

(Bruce R. Martin, Pittsburgh, Pa., Oliver C. Biddle, and Cravath, Swaine & Moore, New York City, Pringle, Bredin & Martin, Pittsburgh, Pa., on the brief), for appellant.

Louis C. Glasso, Pittsburgh, Pa., for appellee.

Before KALODNER and STALEY, Circuit Judges, and STEEL, District Judge.

KALODNER, Circuit Judge.

Was sufficient evidence adduced at the trial to "justify with reason" [1] the jury's finding that the defendant railroad's negligence played a part in producing the injury for which damages were awarded to plaintiff, its employee, in his action under the Federal Employers' Liability Act? [2]

That is the primary issue presented by this appeal by defendant from the judgment suffered by it below on the jury's verdict and the denial of its motions for judgment or a new trial.

The facts as disclosed in the District Court's opinion, D.C.W.D.Pa.1958, 162 F. Supp. 324, and the record, may be summarized as follows:

Plaintiff, Walter Dunn, was employed by defendant, Conemaugh & Black Lick Railroad since 1942, as a member of the crew of a railway motor car, known in railroad parlance as a "Casey Jones", which carried supplies to and from track repair gangs. His job involved lifting extremely heavy rails weighing at times as much as a thousand pounds.

On January 28, 1952, plaintiff, then thirty-six years old, underwent an operation for chronic ulcers requiring a gastric resection of two-thirds of his stomach. He was discharged from the hospital on February 8, 1952. Before he could return to work he was required by defendant to submit to a physical examination by an examining physician of its selection, one Dr. Carney, to determine his fitness to do so. [3] On February 29th Dr. Carney, who was deceased at the time of trial, certified plaintiff as fit for his prior employment as a "Casey Jones" man. Plaintiff returned to that work on March 3d. Although he finished out the day he complained to his foreman of pain. On March 4th he again reported for work but was unable to finish out the day and reported to a dispensary on the premises where he was told to consult his own physician. On March 6th plaintiff applied to defendant for sick benefits because of a "relapse of ulcers". On March 8th plaintiff's surgeon, Dr. McHugh, supplied him with a belt to wear for support. On March 12th Dr. McHugh again examined plaintiff and noted on his application for sick benefits that he would be able to return to work on April 3d. Following a further examination on March 18th, Dr. McHugh wrote to Dr. Carney requesting that he permit plaintiff "to return to work". Dr. Carney again examined plaintiff and certified him as "able to resume his regular work". Plaintiff returned to work on March 19th "throwing switches". This work was classified as "heavy" although lighter than Casey Jones work. Plaintiff early in the day complained that he "just never felt right". The next day plaintiff applied for lighter work as a welder's helper but a fellow employee who had seniority was given the job. Plaintiff continued to work at his assigned task, "throwing switches". On March 21st he experienced a sharp pain in his abdomen while throwing a stiff switch. He asked the track foreman for a dispensary slip which was refused because " * * * they couldn't do nothing about it because that was a sickness, it wasn't an injury". Plaintiff continued working. On May 23d he was examined by Dr. McHugh and told he had developed a hernia which should be repaired.

1. Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493.

2. 45 U.S.C.A. § 51 et seq.

3. By Rule 5, Sec. 5 of the applicable collective bargaining agreement between the Railroad and Dunn's union, the Railroad had the right to require such a physical examination at its expense in order to determine whether an employee, returning to work from a furlough or leave of absence was physically fit to return to work. The Railroad exercised this right.

Plaintiff, however, continued working until June 2d when he was forced to leave his job because of the pain attending a swelling of the abdomen at the incisional area, accompanied by a ventral hernia. He was hospitalized on July 13th after which he underwent two operations for hernia, one on July 14th, the other on July 28th when tantalum mesh was embedded in his abdomen to strengthen it. He was discharged from the hospital on August 8th and received sick benefits until certified by Dr. Carney on October 8th to his old job as a member of a Casey Jones crew. Some ten months later, on August 4, 1953, plaintiff developed another ventral hernia following his lifting of a heavy rail. An operation followed on September 4, 1953, when another and larger piece of tantalum mesh was embedded in the abdominal wall. He was discharged from the hospital on September 16th. He then bid for and obtained, under his seniority rights, the lightest work he could get— a welder's helper. Plaintiff presently has a large ventral hernia about the size of a grapefruit.

At the trial medical testimony was adduced that the ventral hernia suffered by plaintiff was due to his premature return to heavy labor and that the successive hernias resulted from the incisional area having been weakened by his assigned strenuous tasks on March 21, 1952 and thereafter until June 2, 1952.

Further, testimony was adduced that not only Dr. Carney, but defendant's supervisory personnel as well, had knowledge of plaintiff's drastic surgery prior to March 21, 1952, and that his superiors knew he suffered pain while performing the arduous work assigned to him and that he had sought lighter duties. On that score the testimony established that it was defendant's policy to give light work only to such employees who had been injured at work and not to merely ailing employees.

Dr. McHugh testified that prior to March 21, 1952, he talked with a Mr. Kress, "a liaison officer from the railroad who acted as coordinator between management and the medical side and made an effort to have him, if possible, get something not too strenuous" for the plaintiff because he was "fearful * * * complications would result if he was to resume heavy work."

Kress, who described himself as defendant's personnel representative in March 1952, corroborated Dr. McHugh's testimony. He testified that after talking with Dr. McHugh in mid-March 1952, he called plaintiff's supervisor, a Mr. Dorman and "asked him if there was any light work they could give Mr. Dunn."

Victor E. Simmons, defendant's assistant general superintendent in 1952 and 1953, testified that he and other of defendant's personnel, knew of plaintiff's condition before he returned to work in March 1952 and was "concerned about it."

It was stipulated at the trial that defendant and the Bethlehem Steel Company ("Company") are wholly-owned subsidiaries of the Bethlehem Steel Corporation ("Corporation"); that the largest part of defendant's business consists of railroad services to Company's facilities; a large portion of the tracks used by defendant is owned by Company and within Corporation's plant; that defendant "employs no doctors, no nurses and maintains no dispensaries" but that pursuant to a contractual arrangement between defendant and Company any of its employees who have occasion to need the services of a doctor and nurses or a dispensary while working for defendant uses Company's dispensaries and are treated by its doctors or nurses, and employment examinations and examinations for fitness to return to work are also performed by doctors employed by Company; Company receives from defendant, pursuant to the contractual arrangement, a monthly payment of a fixed sum in return for the right to use the services of doctors and nurses or dispensaries as outlined above; and Company employed four doctors who worked out of its main dispensary, three of them treating accident cases, and the fourth giving

physical examinations. In 1952 Dr. Carney was the examining physician.

Since the defendant contended at the trial that Dr. Carney was not its employee but an independent contractor and that it was therefore not liable for his negligence, if such negligence existed, in certifying plaintiff as fit to return to work, the District Court, after charging the jury with respect to such contention, submitted to it this interrogatory:

"Was the examining Dr. Carney an employee of the Railroad or an independent contractor?"

The jury's answer was "Employee of R.R."

In its opinion denying defendant's motions for judgment or a new trial the District Court stated (162 F.Supp. at page 327):

"* * * I * * * conclude, that as a matter of law the examining physician [Dr. Carney] * * * was acting as defendant's employee.

"In addition, I am satisfied that substantial evidence was produced to establish evidence of negligence not only on the part of the examining physician but also on the part of officials and servants of the defendant acting solely on behalf of the defendant. The record is replete with complaints by the plaintiff of his sick condition, the defendant's knowledge of his condition through its examining physician, and/or supervisory employees, and the assignment, nonetheless, of the plaintiff to strenuous work for which he was unfitted, predicated upon company policy refusing sick employees as distinguished from injured employees the benefit of light work."

On this appeal defendant contends:

(1) There is no evidence of any negligence on its part in connection with plaintiff's return to work in March 1952.

(2) Defendant is not responsible under the Federal Employers' Liability Act for the propriety of the medical judgment of Dr. Carney.

■ We do not subscribe to defendant's contentions.

The record discloses that there was sufficient proof of negligence to present a jury question and to "justify with reason" the jury's finding that the defendant's negligence played a part in producing the injuries for which damages were awarded to the plaintiff. Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 510, 77 S.Ct. 443, 1 L.Ed.2d 493; Tennant v. Peoria & Pekin Union Ry. Co., 1944, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520.

Not only the plaintiff and his witnesses testified that the defendant's supervisory employees had knowledge of the plaintiff's drastic surgery some seven weeks before his return to work on March 21, 1952, but defendant's witnesses—Kress, its personnel manager, Dorman, plaintiff's foreman, and Simmons its assistant general superintendent, testified to the same effect. Further, defendant's witnesses testified that the Casey Jones work to which plaintiff was assigned on his return to work was "heavy", and the jury's finding that the assignment of one, who seven weeks earlier had undergone a gastric resection of two-thirds of his stomach, to lifting rails weighing a thousand pounds, constituted negligence, can scarcely be said to be without "reason". Plaintiff's medical testimony that his Casey Jones duties on his return to work in March, 1952 resulted in the ventral hernia which required two successive operations in July 1952, afforded basis with "reason" for the jury's finding that plaintiff suffered extensive injury as a result of his strenuous labors.

■ There was sufficient evidence adduced to make it a jury question as to whether plaintiff had been forced by defendant into work for which he was unfitted by reason of his physical condition at the time. It is settled that where

"* * * management forced a sick employee, of whose illness they knew or should have known, into work for which he was unfitted because of his condition, a case is made out for the jury under the Federal Employers' Liability Act." Nuttall v. Reading Company, 3 Cir., 1956, 235 F.2d 546, 549.

■ It was testified that when Dr. Carney certified plaintiff as fit for work that meant that the sick benefits he had been receiving following his operation in January, 1952 could be discontinued unless he returned to work and, further, that plaintiff could have been dismissed if he failed to report for work after such medical certification. This testimony was relevant to the issue of "force" by defendant and the jury's finding that such "force" existed cannot be said to be without "reason".

■ Coming now to the defendant's contention that "Defendant is not responsible under the Federal Employers' Liability Act for the propriety of the medical judgment of Dr. Carney":

As earlier stated, the District Court, after adequate instructions, submitted to the jury an interrogatory as to whether Dr. Carney was an employee of defendant or an independent contractor and the jury's answer was that Dr. Carney was an employee.

The District Court did not err in submitting the issue of Dr. Carney's status to the jury. It was a jury question. Baker v. Texas & Pacific Ry. Co., 1959, 79 S.Ct. 664, is dispositive on that score. In that case the trial judge had refused to submit a special issue to the jury as to whether the plaintiff was an "employee" of the defendant within the meaning of the Federal Employers' Liability Act and held as a matter of law that an employer-employee relationship did not exist. The Supreme Court granted certiorari, 358 U.S. 878, 79 S.Ct. 118, 3 L.Ed.2d 108 "* * * to investigate whether such an issue is properly one for determination by the jury." [79 S.Ct. 665]

In reversing, the Supreme Court said:

"The Federal Employers' Liability Act does not use the terms 'employee' and 'employed' in any special sense * * * so that the familiar general legal problems as to whose 'employee' or 'servant' a worker is at a given time present themselves as matters of federal law under the Act * * * It has been well said of the question that '[e]ach case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative.' * * * Although we find no decision of this Court that has discussed the matter, we think it perfectly plain that the question, like that of fault or of causation under the Act, contains factual elements such as to make it one for the jury under appropriate instructions as to the various relevant factors under law. See Restatement, Agency 2d, § 220, comment c; § 227, comment a. *Only if reasonable men could not reach differing conclusions on the issue may* the question be taken from the jury * * * 'The very essence of * * * [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable.' Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520." (Emphasis supplied.)[4]

■ The jury's finding that Dr. Carney was defendant's employee is supported by the testimony that, although he was on Company's payroll, the defendant, by virtue of its monthly payments to Company for the use of its medical services, had the right to command Dr. Carney's services; to raise the medical standards applied by Dr. Carney in certifying fitness of its employees and to

---

4. See also Byrne v. Pennsylvania Railroad Co., 3 Cir., 1958, 262 F.2d 906, 911, as amended on denial of rehearing 1959, certiorari denied 79 S.Ct. 798.

reject his certification and require re-examination. In Dickerson v. American Sugar Refining Co., Inc., 3 Cir., 1954, 211 F.2d 200, at pages 202–203, we said:

"In order to determine whether a person is the employee of A or B, the test is whether the one or the other had the right to control, not only the work to be done, but also the manner of doing it, and the person is the servant of him who has the right to control the manner of performance of the work, regardless of whether or not he actually exercises that right."

In Employers' Liability Assur. Corporation v. Bell, 3 Cir., 1933, 63 F.2d 953, we held that a physician could be an employee of an insurance company where the elements of employer-employee relationship existed, and rejected the contention that a doctor by reason of his profession is an independent contractor.[5]

We are in agreement with the District Court's determination that the record justifies a jury finding that Dr. Carney was negligent in certifying the plaintiff to strenuous labor some seven weeks after drastic surgery in view of his knowledge of that surgery and the nature of the work for which he certified the plaintiff.

Applying the injunction of the Supreme Court in Tennant v. Peoria & Pekin Union Ry. Co., supra, 321 U.S. at page 35, 64 S.Ct. at page 412, that: "The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury", and that "It is the jury, not the court, which is the fact-finding body", we are of the opinion that the District Court did not err in denying defendant's motions for judgment or a new trial.

For the reasons stated the judgment of the District Court will be affirmed.

---

5. See also Brown v. Moore, 3 Cir., 1957, 247 F.2d 711, certiorari denied 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112, where it was held that under Pennsylvania law a doctor may be an employee, and

Knox v. Ingalls Shipbuilding Corporation, 5 Cir., 1947, 158 F.2d 973, where it was held that a doctor in a medical clinic maintained by the defendant was its employee.