## Yankie v. Helm

*John M. Gallagher, Jr.*, for plaintiff.
*William D. March*, for defendant.

CATANIA, J., July 27, 1971.—This is an action for libel and slander which was tried by judge and jury. At the conclusion of the trial, the jury returned a verdict against defendant in the amount of $12,000 in general damages and $4,500 in punitive damages.

The evidence at the trial indicated the following:

Plaintiff, William Yankie, was a police officer in the borough of Clifton Heights, Delaware County, Pa., who in 1961 observed defendant, William Helm, driving his automobile in the wrong direction on a one-way street. Plaintiff accordingly issued defendant a traffic ticket and from that time on defendant entered into a course of conduct of harassing the plaintiff, which culminated in the defamatory communications which became the subject of the present action.

In April 1967, defendant sent an anonymous letter to the Hon. Henry G. Sweney, then President Judge of the Delaware County Common Pleas Court, accusing plaintiff of statutory rape, drunken driving and general dereliction of duty and demanding an investigation.

An investigation of plaintiff was conducted by four police agencies. However, because of the scandal involved in the charges, plaintiff felt that

his effectiveness as a police officer had been harmed and he, therefore, resigned from the Clifton Heights Police Department. After his resignation from the police department, plaintiff began working fulltime for a company known as Cliff Thomas for Fences, Inc. Shortly after plaintiff began working full-time for Cliff Thomas, several paper bags and cardboard placards were scattered in the vicinity of his home and on the property of his employer. These bags and placards bore writings charging plaintiff with rape and other misdeeds and were seen by one neighbor, plaintiff's daughters and plaintiff's employer. On the day before these writings were thrown onto plaintiff's lawn and onto his employer's property, defendant visited plaintiff's place of employment and spoke with two of his coworkers. During these conversations, defendant again charged that plaintiff had raped defendant's neice.

An examiner of the questioned documents, Mrs. Renee C. Martin, testified that she had examined the letter to Judge Sweney and photographs of the paper bags and placards aforementioned and compared them with examples of what was known and admitted to be defendant's handwriting and concluded that defendant was unquestionably the person who had written the letter to Judge Sweney and the writing on the paper bags and placards.

Defendant offered no evidence in defense and the jury rendered the verdict as previously stated.

Motions for a new trial were filed and dismissed and defendant has now appealed, necessitating the writing of the present opinion.

The first question raised is whether the award of the jury of general damages in the sum of $12,000 was so excessive and so lacking of support in the

evidence as to shock the conscience of the court. Before a new trial may be awarded on the basis of an excessive verdict, the verdict must be one which shocks the conscience of the court: Flank v. Walker, 398 Pa. 166 (1960). Even where an award of a jury may seem high to the trial court, it should stand if there is ample evidence to justify it, and it is not the prerogative of the trial court to arbitrarily substitute its judgment for that of a jury: Dunn v. Conemaugh & Black Lick R. R., 162 F. Supp. 324. We feel that there is ample evidence in the present record to support the verdict of general damages in the sum of $12,000. Plaintiff testified that the libelous letter which defendant sent to Judge Sweney caused him to be investigated by four police departments and that the resultant scandal greatly impaired his relations with fellow officers and his effectiveness and stature as a police officer in the community at large. As a result, he felt that he had to resign from the force. Although this did not, over the long run, impair him financially, he testified that he lost the enjoyment of the prestige and gratification which goes along with being a public servant and being on a professional level. He further testified that his loss of reputation caused him to fall out of favor in his neighborhood and to lose social intercourse with his neighbors. For these reasons, we feel this contention is without merit.

It is next contended that the court committed error in admitting into evidence the libelous writings offered by the plaintiff as Exhibits P-1 through P-7. In order to establish that defendant was the writer of the letter to Judge Sweney (Exhibit P-1) and of the paper bags and cardboard placards (Exhibits P-2 through P-7), plaintiff offered the tes-

timony of Renee C. Martin, an examiner of questioned documents. Mrs. Martin qualified as a handwriting expert. She was able to say that it was her opinion that defendant was the author of these documents and this testimony was absolutely uncontradicted.

There is also other corroboration of Mrs. Martin's testimony in that prior to the anonymous letter (Exhibit P-1) which was sent to Judge Sweney, defendant had threatened to have plaintiff dismissed from the police force. There is also the testimony of the two fellow employes who testified that they spoke with defendant at Cliff Thomas for Fences, Inc., on the day before the paper bags and cardboard placards were scattered around the property of Cliff Thomas.

There was ample evidence in the record to show that the libelous writings were seen by persons other than plaintiff. It was stipulated that the letter written by defendant to Judge Sweney was, in fact, received by Judge Sweney and that this document spurred an investigation of plaintiff. With respect to the paper bags and cardboard placards, two of these items were found by plaintiff's employer. The remaining paper bags and cardboard placards were scattered in the vicinity of plaintiff's home in Clifton Heights and these were seen by plaintiff's 13-year-old daughter and also by at least one neighbor before plaintiff found them and gathered them up.

The fact that plaintiff's name was not included in some of the writings does not mean that they were not admissible under the present circumstances. All of the writings were scattered on or about plaintiff's home at 513 Cherry Street in Clifton Heights, and we feel from all of the circum-

stances that any neighbors to whom these writings were communicated, as well as members of plaintiff's family, would certainly understand these writings as applying to plaintiff.

The defense contends that it was error to permit plaintiff's attorney to make a rebuttal argument to the jury in view of the fact that the defense did not present any testimony. At the conclusion of the trial and following the summation by the attorney for defendant, a 10-minute recess was called during which the defense attorney asserted that not having put on any testimony, he had the right to the last argument to the jury. We felt that, under the circumstances surrounding the manner in which this was raised and from a consideration of all the circumstances at the time, plaintiff should have the opportunity to rebut defendant's closing argument to the jury. In any event, we do not feel that the order of closing arguments prejudiced the defense.

It is for these reasons that we denied defendant's motions for a new trial.