835 F.2d 879
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jimmie SHELTON, Plaintiff-Appellant,
v.
CHESAPEAKE & OHIO RAILWAY COMPANY, Defendant-Appellee.
 No. 86-2068.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1987.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jimmie Shelton appeals the district court's order granting summary judgment on his claim based on the Federal Employers' Liability Act, 45 U.S.C. Sec. 51, in favor of the Chesapeake & Ohio Railway Company (Railway). Essentially, Shelton argues that the district court erred in finding that he had failed to make out a prima facie FELA claim. We find no error in the district court order, and we affirm.
 
 
 2
 * On February 14, 1984, Shelton filed suit in district court, alleging that the Railway failed to have a company doctor examine and treat him when the Railway knew that he was suffering from a cardiac condition. He also alleged that this failure by the Railway caused the heart attack he sustained on February 27, 1983 on his way home from work.
 
 
 3
 Shelton was first employed as a clerk-operator by the Railway in March 1973. Shelton testified that in October 1978, while driving to work, he first experienced chest and side pain. Afterwards, Shelton sought the advice of his personal physician, Dr. Rose, who examined him, but found nothing wrong with him. Dr. Rose signed a release to return to work. Shelton had been off from work a total of two weeks. Shelton testified that he did not report his physical condition to the Railway other than to state that he had been "sick."
 
 
 4
 Shelton testified that in Spring 1979 he again experienced chest pain. Dr. Sands, recommended by Shelton's aunt, conducted several tests on Shelton, all of which indicated Shelton's condition to be normal. Dr. Sands recommended that Shelton take two months off from work, during which period he could undergo other testing. Dr. Sands found nothing wrong with Shelton, and released him to continue working in his role as a clerk-operator with the Railway. Shelton had taken a total of two months off from work.
 
 
 5
 After returning to work, Shelton was examined by the company doctors at a clinic. The examination was done at the Railway's request, not Shelton's, because, as the record shows, Shelton testified that he had been "feeling fine."
 
 
 6
 In 1982, Shelton experienced what he termed a "black out" at home while in bed. No chest or side pain was experienced at this time. Dr. Sands examined Shelton but found nothing wrong with him. Shelton took three days off from work, and then returned to work. Shelton testified that he reported that he was "sick" to the Railway.
 
 
 7
 Shelton testified that he experienced a tightness in his chest and pain in his left side on February 27, 1983 while going home from work. Upon his arrival home, Shelton called the Railway, and reported that he was "sick."
 
 
 8
 On March 1, 1983, Dr. Sands determined that Shelton had suffered an heart attack resulting from coronary heart disease. On April 13, 1983, Shelton ended his relationship with Dr. Sands and was examined by Dr. Matthews, a cardiologist. Dr. Matthews was referred by a friend. When asked on deposition whether Shelton, during examination immediately after the heart attack of February 27, 1983, had related the chest pain in 1978 to this heart attack, Dr. Matthews said that he had not. Dr. Matthews found that Shelton suffered from "severe triple vessel disease." In December 1983, Dr. Matthews released Shelton for work with certain restrictions which were communicated to the Railway's medical examiner. The Railway also examined Shelton.
 
 
 9
 Shelton returned to work as a PBX Operator, a position meeting all the restrictions that Dr. Matthews had imposed. After a short time in this position, Shelton was displaced on January 20, 1984 by a woman with more seniority. After this displacement, Shelton had insufficient seniority to secure any other position with the Railway under the collective bargaining agreement. Shelton filed suit against the Railway on February 14, 1984.
 
 II
 The FELA states in relevant part:
 
 10
 "Every common carrier by railroad while engaging in commerce between any of the several States or Territories ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. Sec. 51.
 
 
 11
 In order to make out a prima facie case of a FELA violation, this Circuit has required a plaintiff to show (1) that he was injured while in the scope of his employment, (2) which employment is in furtherance of the railroad's interstate transportation business, (3) that his employer was negligent, and (4) that the employer's negligence in some way caused the injury for which damages are sought. Green v. River Terminal Railway Co., 763 F.2d 805, 808 (6th Cir.1985). A railroad is not an insurer of its employees' safety, and is only liable for its negligence resulting in reasonably foreseeable injury to the employee. Inman v. Baltimore & Ohio Railroad, 361 U.S. 138 (1959). What is reasonably foreseeable depends, as it does in any other negligence claim, on what is reasonably foreseeable in the circumstances. Green, 763 F.2d at 809. Under this framework, Shelton maintains that the railroad was negligent in the circumstances in not providing him with sufficient medical services before the heart attack occurred on February 23, 1983, and that negligence caused the heart attack. We disagree.
 
 
 12
 As the record attests, the Railway was never informed of the nature and extent of Shelton's medical problems. Furthermore, Shelton's own personal physicians were not aware of Shelton's cardiac problems, nor able to prevent his 1983 heart attack. As the record also shows, the Railway cooperated with Shelton's personal physicians after the heart attack in arranging a job for Shelton meeting the physicians' prescriptions.
 
 
 13
 On the other hand, Shelton argues that the Railway had a duty under the FELA, as a matter of law, to provide him with proper medical services before the 1983 heart attack, yet he fails to cite any persuasive authority establishing such a legal duty under the FELA. In fact, no federal appellate court has upheld an FELA claim for failure to provide adequate medical services before an injury or illness occurs.
 
 
 14
 Shelton cites the case of O'Donnell v. Pennsylvania Railway Co., 122 F.Supp. 899 (S.D.N.Y.1954), as support for his claim. There, a plaintiff's eye was injured by contact with a foreign substance in the scope of his employment. Disregarding the plaintiff's preference to be treated by his own personal physician, the foreman on duty ordered the plaintiff to the company doctor's office. In the course of treatment, the company doctor injured the plaintiff's eye. Far from holding that an FELA action lies for failure to provide medical services before an injury occurs, O'Donnell stands only for the proposition that liability may rest on a company doctor's negligent treatment of an on the job injury to an employee, when company treatment is imposed on the worker. Quite clearly, Shelton has not maintained that the Railway failed to provide him with proper medical services after he sustained his heart attack. See Randall v. Reading Co., 344 F.Supp. 879 (M.D.Pa.1972) (railroad had duty to furnish prompt medical attention to an employee who suffered an heart attack on the job).
 
 
 15
 The Supreme Court has stated that a common carrier has no duty, except in special circumstances, to provide medical services to disabled employees. The Court specifically stated that exceptional circumstances referred to the duty to render aid to an employee "exposed by the conditions of the work to extraordinary risks, [who] is helpless altogether unless relief is given on the spot." Cortes v. Baltimore Insular Line, 287 U.S. 367, 376 (1932). If Shelton had evidence that his heart attack occurred on the job, had rendered him unable to aid himself, and that the Railway either neglected or refused to give him medical assistance at that time, he might have made out a prima facie case. However, the facts of Shelton's case do not even remotely approach that situation.
 
 
 16
 Accordingly, we AFFIRM the district court's grant of summary judgment to the defendant Railway.