[Civ. No. 21308. First Dist., Div. One. Dec. 1, 1964.]

LILLIE MAE MANGRUM, as Administratrix, etc., Plaintiff and Appellant, v. UNION PACIFIC RAILROAD COMPANY, Defendant and Respondent.

Nichols, Williams, Morgan & Digardi, Cyril Viadro and Edward M. Digardi for Plaintiff and Appellant.

Edward C. Renwick, Malcolm Davis, C. A. Zubieta, M. W. Vorkink, William Irl Kennedy, R. D. McClain and William F. Raff for Defendant and Respondent.

BRAY, J.*—In an action for damages for the death of her husband, brought under the Federal Employers' Liability Act, plaintiff appeals from judgment after jury verdict in favor of defendant.

## QUESTIONS PRESENTED

1. Alleged erroneous instructions on proximate cause.
2. Alleged erroneous instructions on agency:
 (a) as to Mangrum's fellow employees;
 (b) as to doctor furnished by defendant;
 (c) as to the dining car steward;
 (d) as to the hotel clerk at the hotel provided by defendant.
3. Alleged erroneous limitation of testimony as to Mangrum's illness while off duty.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

RECORD

Plaintiff is the widow of Lewis Mangrum and the administratrix of his estate. He was a waiter on the City of Los Angeles, one of defendant's interstate trains. He died of pneumonia as the train was pulling into Rawlins, Wyoming. This being a Federal Employers' Liability Act action plaintiff is required to prove that Mangrum's death was proximately caused by negligence of defendant.

At the time of his death Mangrum was assigned to the train City of Los Angeles from Omaha to Chicago, then to Los Angeles, and then back to Omaha, with Omaha being his home terminal. Mangrum was ill on the trip from Omaha to Chicago and Chicago to Los Angeles. While in Los Angeles, Mangrum and other members of the dining car crew stayed at the King Hotel. The Union Pacific has a contractual arrangement with the hotel whereby a certain number of rooms are set aside for the dining car employees, but the men are not required to stay at the hotel. The dining car crew arrived at Los Angeles at 10:15 a.m. and were off duty until 11 a.m. the following day. They are not paid for the off-duty 25 hours, and the Union Pacific has no control over their actions during that time.

Mangrum registered at the King Hotel on November 4, 1960. He appeared to be sick and nervous when he did so. He reported for work the next day, being helped to the train by two other crew members. His fellow employees took his part of the work in loading supplies from the commissary onto the train so that he could rest. Mangrum assisted in arranging the supplies inside the dining car but appeared to move a little slowly. He attempted to assist in serving dinner that night but was sent to the dormitory by the steward, Mr. Ketley. Mangrum began to perform his normal duties at the breakfast meal but was sent back to the dormitory car again by the steward. The steward then informed the train conductor that Mangrum was in need of a doctor. When the train was approximately one hour out of Salt Lake City, the train conductor sent a wire there requesting that a doctor meet the train at Ogden, Utah.

Dr. Feeny, a certified specialist in internal medicine and a physician under contract to the Union Pacific Railroad Employees Hospital Association testified that he was called by telephone to go to the railroad station and examine Mangrum. He made a diagnosis of bronchitis and administered penicillin. He only spent a few minutes with Mangrum and did not take

his temperature nor ask anyone for information about his condition. Dr. Feeny told Mangrum that he should get off the train and enter the hospital. However, Mangrum stated he would prefer to go to Omaha and be treated by his own physician. Dr. Feeny agreed that this would be safe. But he admitted that he would have diagnosed Mangrum's condition as being much more serious than bronchitis had a complete history been given to him and that he would not have allowed Mangrum to remain on the train if he had known how serious his condition really was.

Mangrum remained on the train and early in the afternoon was found sitting in a passenger car admittedly not knowing where he was. Later that afternoon, he was found turning in a circle around the water stand in the dormitory. Mangrum was turned over to a doctor and ambulance attendants at Rawlins, Wyoming. He died of pneumonia around this time.

Plaintiff does not attack the sufficiency of the evidence to support the verdict. She contends that the giving of certain instructions was prejudicially erroneous.

1. *Proximate cause.*

 The court instructed, ''In order to impose liability on the defendant railroad on the basis of the negligence, if any, on the part of Doctor Feeny, if you find such to exist, you must first determine that Doctor Feeny was the agent of the railroad and acting within the scope of his authority and, second, that he failed to exercise the degree of care required of him by law and that such failure was *the proximate cause* of Louis [*sic*] Mangrum's death.'' (Italics added.)

A later instruction stated, ''Liability in law attaches only to *the proximate cause* of the injury, and to that cause only when it issues from negligence. Although many circumstances leading up to and surrounding an injury may be linked to it in a chain of causation, so that we may say that the injury would not have happened without them, *the proximate cause* consists only of the factor or combination of factors that cause the injurious result.'' (Italics added.)

Plaintiff's attack on these instructions is based upon the word ''the'' in the emphasized portions. She contends that the first instruction, in effect, placed upon her the burden of showing that negligence of Dr. Feeny was the sole proximate cause of death rather than ''a'' proximate cause. Under the Federal Employers' Liability Act, a railroad employer becomes liable for injuries to his employees if his negligence

plays any part "even the slightest" in producing the injuries for which damages are sought. (*Rogers* v. *Missouri Pac. R. Co.* (1957) 352 U.S. 500 [77 S.Ct. 443, 1 L.Ed.2d 493].) Although the use of "the" instead of "a" was erroneous, the error could not have been prejudicial when the instructions are considered in context with all the other instructions on proximate cause which were given. It must appear that the error was prejudicial (Code Civ. Proc., § 475; see 3 Witkin, Cal. Procedure, §§ 99, 100, pp. 2267-2268) or that the instructions if conflicting with other instructions were likely to mislead the jury. (See 2 Witkin, Cal. Procedure, § 69, p. 1800.)

██ "The determination whether, in a specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn." (*Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652, 660-661 [320 P.2d 500]; *Sebrell* v. *Los Angeles Ry. Corp.* (1948) 31 Cal.2d 813, 817 [192 P.2d 898].) ██ An entire reading of the jury instructions reveals that the trial judge used the phrase "a proximate cause" fourteen times. The court also referred to "one of the proximate causes," "proximate causes," and "a contributory proximate cause."

Immediately preceding the instructions first above-mentioned were instructions to the effect that if the jury found that "Doctor Feeny and all the other alleged agents of the defendant railroad were not negligent, or if negligent that his or their negligence was not *a* proximate cause of the death of Louis [*sic*] Mangrum, then . . . it becomes unnecessary to consider the question of agency." (Italics added.) "But if you find that any or all of such alleged agents were negligent and that such negligence was *a* proximate cause of the death" (italics added) then agency must be determined. Then followed instructions on agency, and then the first instruction hereinbefore quoted.

Following that instruction were several on the duties of a physician and the standard of care applicable; and then, "In order to impose liability upon the defendant, its breach of duty, acting through its agents and employees, if any, must have been *a* proximate cause of Louis [*sic*] Mangrum's death. . . ." (Italics added.) After stating that to reduce recovery in this case decedent's contributory negligence, if any, must have contributed proximately to his death, the court defined "*A* proximate cause of an injury" as "*a* cause" and then

gave the following instruction: "This does not mean that the law seeks and recognizes only one proximate cause of an injury, consisting of only one factor, one act, one element of circumstance, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such case each of the participating acts or omissions is regarded in law as a proximate cause." This was followed by the instruction hereinbefore quoted.

Thence followed: "To be entitled to recovery in this action, the plaintiff must prove by a preponderance of the evidence that the defendant was negligent and that its negligence was *a* proximate cause of Louis [*sic*] Mangrum's death." (Italics added.)

█ "If the instructions harmonize as a whole and fairly and accurately state the applicable law, a reversal may not be had because of verbal inaccuracies or because a separate instruction does not contain all of the elements which are to be gathered from the instructions as a whole." (*Yecny* v. *Eclipse Fuel Engineering Co.* (1962) 210 Cal.App.2d 192, 199 [26 Cal.Rptr. 402] ; see *Smith* v. *Southern Pac. Co.* (1956) 138 Cal.App.2d 459, 465 [292 P.2d 66].) In *Peterson* v. *Safeway Stores, Inc.* (1960) 185 Cal.App.2d 24 [7 Cal.Rptr. 924], the same problem was before the court. There the article "the" was substituted for the article "a." On page 29 of that decision the court said, "We do not believe that any jury could have been misled by the use of the article 'the' rather than the article 'a'. . . ."

Although that case was not under the Federal Employers' Liability Act it still was an instruction involving proximate cause, in fact one of the same instructions given in this case. (See BAJI No. 104.) The three isolated instances in which the trial judge used "the" instead of "a" or a similar less limiting phrase could not have prejudiced the plaintiff's case nor could it have misled the jury.[1]

2. *Agency.*

The theory upon which this case was tried, is that defendant, through its employees and agents negligently failed to provide

---

[1]It should be pointed out that in plaintiff's proffered Instruction 5 dealing with a railroad's liability under the federal law where *the* proximate cause of an employee's death resulted in whole or in part from the negligence of any of the employees, etc., (refused by the court because covered in the instructions given) defendant referred to "*the* proximate cause." (Italics added.)

decedent with the care which his condition required. Defendant concedes that defendant had the duty to exercise reasonable care in securing medical attention for Mangrum.

Plaintiff contends that as a matter of law the King Hotel clerk, the dining car steward, and Mangrum's fellow employees were all agents of defendant and had a duty to take some action on behalf of Mangrum because they all knew that he was seriously ill. The court defined agency and instructed, in effect, that it was for the jury to determine whether agency existed as to each of such persons and whether any of them were negligent in their actions toward Mangrum.

(a) *The fellow employees (other than the steward).*

Plaintiff contends that a duty to report Mangrum's condition to the dining car steward existed upon the part of the other employees, as a matter of law. Plaintiff does not contend that because his fellow employees had knowledge of it, that notice of Mangrum's illness was chargeable to the company. It is an elementary principle that for knowledge of an agent to be chargeable to his principal, such knowledge must relate to some matter within the scope of the agent's authority, so that it is his duty to report the information to the employer. The evidence showed that ordinarily it was not the duty of the fellow employees to report any illness of another employee, rather the sick person must report his own illness to a supervisor.

Supporting her theory that the fellow employees had a duty as a matter of law to report Mangrum's condition, plaintiff cites *Anderson* v. *Atchison T. & S. F. Ry. Co.* (1948) 333 U.S. 821 [68 S.Ct. 854, 92 L.Ed. 1108], a Federal Employers' Liability Act action brought in the California Superior Court against the defendant railroad to recover damages for the alleged wrongful death of an employee. The complaint alleged that decedent was a conductor on the defendant's passenger train westbound from Amarillo, Texas, to Belen, New Mexico. While the train was moving approximately opposite the defendant's station at Gallaher, New Mexico, decedent fell from the train's rear vestibule where it was proper for him to be in connection with his duties. Decedent's fall resulted in injuries which made it impossible for him to secure help by his own efforts. At the next station, where the train stopped, the defendant's employees " 'made note of the absence of decedent' " but passed by it and three other stations without taking any steps to ascertain his whereabouts or what had happened to him. At the next station thereafter (Yeso), the regular train con-

ductor directed the defendant's employees there to wire other employees along the route the train had traversed to ascertain decedent's whereabouts. The Yeso employees " 'carelessly and negligently' " failed to transmit any message " 'for an unnecessarily long period of time' " and when the message was finally received by other of the defendant's employees at Clovis, New Mexico, they " 'carelessly and negligently failed to institute and pursue a search [for decedent] within a reasonable period of time.' " When search was ultimately made he was found lying alongside the track opposite the station at Gallaher. Three days later he died, due to the exposure.

The California Superior Court held that the allegations of the complaint were insufficient to support a judgment for the plaintiff, and gave judgment for the defendant. The California Supreme Court affirmed. The United States Supreme Court reversed saying: "It thus appears that we have a complaint which charges that a conductor disappears from a moving train in bitter cold weather at a time when his duty requires him to be on the rear vestibule, his absence is discovered, and efforts of any kind to ascertain and save him from his probable peril are not promptly made by other train employees, the only persons likely to know of his disappearance and the probable dangers incident to it. We are unable to agree that had petitioner been permitted to introduce all evidence relevant under her allegations, the facts would have revealed a situation as to which a jury under appropriate instructions could not have found that decedent's exposure and consequent death were due 'in whole or in part' to failure of respondent's agents to do what a 'reasonable and prudent man would ordinarily have done under the circumstances of the situation.' [Citations.]" (P. 823.)

From this appellant believes that there was a duty imposed upon Mangrum's fellow employees to report his illness, and their failure to do so was negligence imputable to their employer as a matter of law. However, the case does not lay down such a broad rule. In *Anderson* the court is saying that possibly a jury can find negligence and the railroad company's responsibility if allowed to pass upon all the evidence under the proper instructions. *Anderson* holds, in effect, that the agency question as well as the question of negligence if the employees are found to be agents in the circumstances is a matter for the jury, thereby supporting the trial court's action in our case in leaving these questions to the jury.

In the present case the evidence shows that Mangrum himself must report his own illness to a supervisor. The normal supervisor to whom such an illness would be reported would be the dining car steward. All employees of the Union Pacific Railroad Company belong to the Union Pacific Railroad Employees Hospital Association and are familiar with the written rules of that association. If an employee is not feeling well on the day he is due to go out on a train, the practice and custom is for him to call his superior officer and not to report to a fellow worker such as another waiter or cook. Only in extreme instances would it be the fellow employee's duty to report the condition of a sick employee.

To hold Union Pacific liable for Mangrum's death because his fellow employees negligently failed to notify the railroad or its steward of his illness, such duty must have been within the scope of their employment.[2] The assistant manager of defendant's dining car and hotel department testified, on cross-examination, that if a waiter's ill condition was serious enough, it would be the duty of a fellow waiter to report that fact to the steward, and the steward's duty to report that condition to the witness who had boarded the train at Green River, Wyoming. Thus, the court was right in leaving to the jury the determination of whether decedent's condition as it appeared to his fellow waiters was of the type which placed a duty upon them to report it. Where different theories can be drawn from the evidence, the question whether an employee was acting within the course of his employment is a question of fact for the jury. (*Loper* v. *Morrison* (1944) 23 Cal.2d 600, 607 [145 P.2d 1]; *Meyer* v. *Blackman* (1963) 59 Cal.2d 668, 675 [31 Cal.Rptr. 36, 381 P.2d 916]; *Sullivan* v. *Matt* (1955) 130 Cal.App.2d 134, 139 [278 P.2d 499].)

Only if the facts are susceptible of one inference, does the question become one of law and not of fact for the jury. (*Bourne* v. *Northern Counties T. Ins. Co.* (1935) 4 Cal.App. 2d 69 [40 P.2d 583].) In this case the facts do not sustain a sole inference that a duty to report was within the scope of their employment, rather there is a conflict which the jury must decide.

---

[2] The Federal Employers' Liability Act abrogates the common-law rule that an employee must bear the risk of injury or death through the fault or negligence of a fellow servant, and applies the principles of *respondeat superior* to impose liability on the employer. (*Jamison* v. *Encarnacion* (1930) 281 U.S. 635 [50 S.Ct. 440, 74 L.Ed. 1082].)

(b) *Dr. Feeny.*

The court left it to the jury to determine whether Dr. Feeny was an agent of defendant. Plaintiff argues that Dr. Feeny performed a nondelegable "operational activity" of the railroad company. (*Sinkler* v. *Missouri Pac. R. Co.* (1957) 356 U.S. 326 [78 S.Ct. 758, 2 L.Ed.2d 799].)

In determining Dr. Feeny's relationship to defendant under the circumstances of this case it is well to review the philosophy of the Federal Employers' Liability Act which provides that a railroad's liability under section 1 is to compensate its employees in damages for injury resulting in whole or in part from the fault of " 'any of its officers, agents or employees' " of such carrier. Admittedly Dr. Feeny was not an officer or employee of defendant. Our inquiry is limited to whether he was an "agent," in which event defendant would be liable for his negligence, if any. We are also concerned with the question of whether, if not an agent, nevertheless defendant would be bound by his negligence as an independent contractor. As said in *Sinkler* v. *Missouri Pac. R. Co., supra,* 356 U.S. 326, the Federal Employers' Liability Act "was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. [Citations.] The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier." (P. 329.) "[J]ustice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered." (P. 330.)

The court pointed out that "some common-law jurisdiction recognized an exception to the general rule of *respondeat superior* when a railroad engaged an independent contractor to perform *operational activities* required to carry out the franchise. In that circumstance the railroad was held liable for the fault of the servants of the independent contractor even though the *railroad did not control the manner or method by which the latter did the contracted work.*"[3] (P. 328; italics added.) The court then referred to the theories sup-

---

[3]This is a significant statement to be considered in our case, inasmuch as, because of the professional character of his services, a railroad may not control the manner or method by which a physician does his work.

porting this liability, as being "a nondelegable duty of care springing from the contractual relationship between employer and employee, [citation], or as a duty springing from the franchise to see that no wrong is done through the exercise by other persons of chartered powers. [Citation.] However phrased, substantial authority in common-law decisions supported recovery by the railroad employee from his employer for injuries caused by the fault of employees of an independent contractor performing a part of the employer's railroad operations." (P. 329.) The court then states, "[I]t was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor. . . . Plainly an accommodating scope must be given to the word 'agents' to give vitality to the standard governing the liability of carriers to their workers injured on the job." (Pp. 330-331.)

The court held "that when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of section 1 of the FELA." (Pp. 331-332.)

The circumstances to which the court applied that rule follow. In *Sinkler* v. *Missouri Pac. R. Co., supra,* 356 U.S. 326, the petitioner was employed by defendant railroad company as a cook on the general manager's private car. While he was working in the car a switching crew employed by the Houston Belt & Terminal Railway Company (hereinafter called the Belt Railway) were switching the car from one track to another. Through the fault of the switching crew, the car was caused violently to collide with another railroad car, and the petitioner was injured. He recovered judgment against his employer in a Federal Employers' Liability Act action. The Texas Court of Civil Appeals reversed upon the ground that the Federal Employers' Liability Act did not subject the defendant to liability for injury of its employees caused by employees of the Belt Railway. On certiorari to the United States Supreme Court after the Supreme Court of Texas denied a writ of error, that court reversed and remanded. It pointed out "Switching is a vital operational activity of railroading. . . ." (P. 327.) No switching in the Houston terminal area where the accident occurred was done by the defendant; switching had been contracted with the

Belt Railway, which was organized by the defendant and other carriers for that purpose. The defendant was represented on Belt Railway's Board of Directors and owned one-half of the latter's stock. The expenses of Belt Railway were shared by the carrier stockholders.

*Ward* v. *Atlantic Coast Line R. Co.* (1960) 362 U.S. 396 [80 S.Ct. 789, 4 L.Ed.2d 820], was an action under the Federal Employers' Liability Act by a railroad section gang laborer employed by the defendant who was injured while engaged in replacing ties under a siding track maintained by, and repaired at the expense of, a private corporation. The reviewing court held that the private corporation was not the agent of the railroad, nor was the employee " 'engaged in furthering the operational activities' " of the railroad, as in *Sinkler, supra*, but that the issue of whether the laborer was working for the railroad at the time of the accident was to be determined by the jury, and that the trial court erred in instructing that such issue could be determined solely on the question of whether the railroad considered him to be working for it or the private corporation. The reviewing court discussed the doctrine of *Sinkler* and stated where "the railroad engaged an independent contractor to perform operational activities required to carry out the franchise" the railroad is liable for the negligent acts of the independent contractor.

In *O'Donnell* v. *Pennsylvania R. Co.* (1954) 122 F.Supp. 899, the plaintiff while working on the defendant's engine received a foreign substance in his eye. Later an assistant road foreman instructed him to consult a doctor in the defendant's employ. Through the negligence of the doctor the plaintiff suffered an injury to his eye. The sole question presented was whether the plaintiff was working in interstate commerce. It was held that "he was doing something which was intended to lay the foundation for and to be in aid of subsequent acts of interstate commerce." (P. 901.) Although the doctor was admittedly in the employ of the railroad, the case is important here because it holds, in effect, that a physician's services in caring for an injured employee is in aid of the operation of the railroad. We can see no difference in this respect as applied to an injured employee or to an employee sick while on duty.

The *Sinkler* doctrine was applied in *Leek* v. *Baltimore & Ohio R. Co.* (1962) 200 F.Supp. 368. This was a case involving injuries to defendant's railroad employee sustained while riding in a taxi cab. The taxi cab was transporting the plaintiff back to the railroad yard from a chemical plant at the

completion of his work day. Through the negligence of the taxi driver there was an accident and plaintiff was injured. The cab company and defendant railroad company had previously made an oral agreement whereby the cab company would run a shuttle service for the railroad to transport its employees to and from different job areas. The court followed the *Sinkler* doctrine allowing plaintiff to recover from the railroad on the theory that transporting plaintiff while on the job was an " 'operational activity' " of the railroad.

These cases apparently have initiated a trend to wipe away the line between agent and independent contractor in Federal Employers' Liability Act cases. Likewise, there is a trend to the effect that medical care provided by a railroad to its employees is considered "operational activities" and that the question of agency becomes irrelevant. As pointed out in the dissenting opinion of Mr. Justice Harlan in *Sinkler, supra,* the United States Supreme Court has been rapidly incorporating the Federal Employers' Liability Act into what amounts to a workmen's compensation statute.

In *Dunn* v. *Conemaugh & Black Lick R.* (1959) 267 F.2d 571, an employee of the railroad underwent a drastic operation for chronic ulcers. Before he could return to work he was required by the defendant to submit to a physical examination by an examining physician of its selection. The doctor certified him as fit to return to work. At the trial the defendant contended that the doctor was not its employee but an independent contractor. This issue was submitted to the jury. The defendant railroad employed no physicians but had a contractual arrangement with the Bethlehem Steel Company under which any railroad employee needing the services of a doctor was treated by the Bethlehem Steel Company's doctors, and employment examinations and examinations for fitness to return to work were performed by these doctors. The district court judge in denying the defendant's motion for new trial stated that as a matter of law the doctor was acting as defendant's employee. However, the reviewing court held that the doctor's status under the circumstances was a jury question.

*Carney* v. *Pittsburgh & Lake Erie R. Co.* (1963) 316 F.2d 277, was a Federal Employers' Liability Act action brought against the railroad company by an employee for injuries received while asleep and off duty, as a consequence of his fall from a negligently maintained bed in the Pittsburgh & Lake Erie Railroad Y.M.C.A., in Campbell, Ohio. The plaintiff's expenses at the Y.M.C.A. were billed directly to the railroad

which paid them on a monthly basis. The first question presented was whether the plaintiff, being off duty at the time of the accident was "employed" within the meaning of the act. The court quoted from *Mostyn* v. *Delaware, L. & W. R.*, 160 F.2d 15. " ' 'It seems to us that when a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, or to rest and recuperate, they must be regarded as in its "employ," ' ' '' (p. 278) and held that the case was "in harmony with those decisions which have found related activities to be 'necessarily incident' to one's employment." (P. 279.) The second problem considered by the court was whether the railroad was responsible for the Y.M.C.A.'s negligence in the maintenance of its facilities. The court held "that plaintiff's residence and lodging at the Y.M.C.A. was part of the operational activities of the railroad; that the Y.M.C.A. in supplying those services to plaintiff by arrangement with the railroad, was performing operational activities of plaintiff's employer and in that capacity was an agent for the employer in accordance with section 1 of the Employers' Liability Act." (P. 279.)

■ Ordinarily a doctor is by reason of his profession an independent contractor, but he may under certain circumstances become an agent. (*McGuigan* v. *Southern Pac. Co.* (1954) 129 Cal.App.2d 482 [277 P.2d 444].) In resolving this point each case must be decided on its particular facts and ordinarily no one feature of the relationship is determinative. (*Cimorelli* v. *New York Cent. R. Co.* (1945) 148 F.2d 575, 577.)

There is very little evidence in this case on Dr. Feeny's relationship to defendant. Dr. Feeny testified that he was on the staff of four different hospitals, that he engaged in private practice, that he had a contractual relationship with the Union Pacific Railroad Employees Hospital Association, that he was paid on a salary basis by the hospital association for services rendered. Under his contract with the hospital he was to handle "medical problems of the employees of the association." He is also called from time to time to perform emergency services on passengers or railroad employees. Dr. Feeny was not sure if the defendant reimbursed the hospital association for its expenses, but he did know that the railroad employees paid regular dues to support the hospital association.

Of considerable significance is *McGuigan* v. *Southern Pac.*

*Co., supra.* This was a Federal Employers' Liability Act action brought by McGuigan's widow against the railroad company to recover damages for the death of her husband, it being claimed that the death resulted from the negligence of the employer, or from the negligence of others for whom the employer was liable. The gist of the claim of negligence as applied to the doctors at the Southern Pacific Hospital where McGuigan had been treated for a certain heart condition, was that the doctors negligently diagnosed his ability to return to work, and failed to inform him and the company that work other than sedentary would be dangerous for him. The trial court instructed that the defendant could be liable for any negligence of the doctors only if the jury found that the doctors were the agents of the defendant. The hospital got its income from fixed sums deducted monthly from the salary of the Southern Pacific employees and moneys paid by the railroad to the hospital for the treating of defendant's employees. Employees were entitled to medical care and hospitalization for nonindustrial injury and disease. The Southern Pacific furnished the hospital with transportation of its supplies, the use of its communication facilities, advice from its engineering and purchasing departments and with some accounting services. The Southern Pacific and twenty other companies with payroll deduction plans used and paid for the facilities of the hospital. The court held that the company derived direct financial benefits from its arrangements with the hospital. "Not only does it obtain treatment for its employees for injuries on the job at one-half the actual cost of such care, but without charge the hospital examines railroad employees to determine their physical fitness for duty and certifies the result of such examination to the employer." (Pp. 489-490.) "The jury was instructed at length that if the doctors were found to be agents of the appellant to determine the physical fitness of the employer's employees, and if the doctors were negligent, the appellant would be liable. These instructions correctly defined agency, scope of authority, and necessity for right of control."[4] (P. 493.) These instructions were attacked by the defendant on the theory that even if an agency existed, the doctors being licensed professionals, the principal, a nonprofessional, could not be held liable for negligence. As to this contention the court said, "If an agency relationship existed it seems clear to us that the normal rules of agency apply." (P. 493.) These instruc-

---

[4]Similar instructions were given in the case at bench.

tions were followed by an instruction to the effect that the defendant "would still be liable if the doctors were negligent whether the doctors were agents or independent contractors." (P. 493.)

While the relationship between the hospital and the railroad in *McGuigan* was different from the relationship between the hospital and defendant in the case at bench, in that there the railroad contributed to the support of the hospital and the railroad was represented on its board of managers, while here the railroad did not contribute to the hospital's support, nor was it represented in any way with the hospital's management; such difference is not important for the reason that the court in *McGuigan* placed liability on the Southern Pacific because that company from the operations of the hospital derived direct financial benefits, as hereinbefore stated. So in our case defendant derived direct financial benefits from the hospital supplying doctors to treat injured or ill employees and to determine their fitness to work as a result of sickness or injury.

"The cases on this subject are not clear-cut. It seems to be the general rule that an employer who undertakes gratuitously to furnish medical attention to his employees is liable only if he is negligent in the selection of the physician, and is not liable for the negligence of the doctor, although there are cases to the contrary. . . . But where the medical services are furnished under circumstances that a direct benefit to the employer results, the employer is liable for the negligence of the doctors." (P. 494.) "The key test as to the extent of the employer's duty seems to be whether the employer secures a financial benefit from the operation of the hospital. . . . Thus, although the hospital may be an independent contractor in many respects, if a financial benefit accrues to the employer by the operation, the latter is liable for the negligence of the doctors in performing a duty assumed by the employer. That is this case." (*McGuigan* v. *Southern Pac. Co., supra,* at p. 495.)

The court later stated: "Thus, although the challenged instruction may have been erroneous in telling the jury that if it found the hospital to be an independent contractor nevertheless appellant would be liable under the circumstances set forth in the instruction, such error could not have been prejudicial because, *as a matter of law, the uncontradicted evidence establishes a case of respondeat superior.*" (P. 496; italics added.)

Thus the court held that applying the test of financial benefit, the doctors were the Southern Pacific's agents as a matter of law. As the jury found the railroad liable and thereby impliedly found the doctors to be the railroad's agents there could be no prejudicial error in the court having left the question of agency to the jury rather than instructing that as a matter of law the doctors were such agents.

■ From the cases hereinbefore discussed there appear two theories under which an independent contractor performing a service for a railroad employee at the request of his employer is considered as "agent" of the carrier under the Federal Employers' Liability Act. One, as in *Sinkler, supra,* where the service constitutes a nondelegable "'operational activity'" of the carrier. Testing the relationship of Dr. Feeny to defendant in the instant case by the *Sinkler* rule, it appears as a matter of law that the doctor was engaged in an operational activity of the railroad, one necessary to carry out its franchise, as *Ward, supra,* puts it, for a railroad cannot operate properly without a full healthy crew aboard a train.

■ The second theory is, as stated in *McGuigan, supra,* where the service is such that a financial benefit accrues to the carrier from such service. Testing Dr. Feeny's relationship to defendant under that theory it appears as a matter of law that a financial benefit accrued to defendant from his services, as defendant was required by custom and practice to take care of its employee who was sick while on duty.

■ Dr. Feeny as a matter of law being an "agent" of defendant under the Federal Employers' Liability Act, the court erred in leaving the determination of that agency to the jury. The jury should have been told that he was such agent.

This error was highly prejudicial. The court instructed that a test by which to determine agency is whether the person charged with being an agent "was subject to the orders and control" of the one claimed to be the principal. ■ As indicated in *Carney, supra,* at page 279, the matter of control is not necessarily a factor in determining whether an independent contractor is an "agent" under the Federal Employers' Liability Act. Moreover, no instructions were given to the jury as to how to determine "agency" under the Federal Employers' Liability Act. The only instructions on the subject were the usual agency instructions. As hereinbefore shown the test of agency under the Federal Employers'

Liability Act can be, and in the case of a doctor's or hospital's services must be, somewhat different than in the usual agency case. Thus, the question of a Federal Employers' Liability Act type agency was never passed upon by either the court or jury. As there was no dispute as to the facts, the determination of the agency of Dr. Feeny should have been made by the court. See *O'Donnell* v. *Pennsylvania R. Co.*, *supra*, 122 F.Supp. 899, where the court said: "But, the facts being undisputed, where the sole factor weighing in favor of the status of independent contractor is the doctor's professional discretion, and that to a minimum degree, to submit the issue to the jury would in effect be to ask them to determine as a matter of law whether a doctor can be an employee." (P. 902.)

In *Dunn, supra*, the court held that the question of whether Dr. Carney was an employee or an independent contractor was a jury question. It held in effect that the case contained factual elements from which conflicting inferences and conclusions could be drawn. It pointed out, however, that if reasonable men could not reach different conclusions on the issue, the issue became one for the court. In the instant case there was no conflicting evidence on the subject, nor conflicting conclusions to be drawn therefrom.

■ Defendant contends that by offering plaintiff's proposed instruction 9, plaintiff invited the court's error in instructing the jury to determine the question of Dr. Feeny's agency. Plaintiff's instruction 9 did not deal with the question of determining agency. It dealt with the question of the authority and conduct of those whom the jury might have found to be agents of the company. The offering of this instruction in no wise constituted an invitation to error.

Defendant in its brief states, "Whether or not Dr. Feeny should have been considered as the agent of the Railroad Company in the performance of his medical attentions was likewise a matter for jury determination under appropriate instructions." Thus, defendant concedes that there was evidence which would support a finding of agency. Such a determination concerning a doctor who ordinarily would be considered an independent contractor, could not be based upon the ordinary tests of agency, but only because under the Federal Employers' Liability Act, such a contractor can be held to be an agent, and, as we herein point out, there was no conflict in the evidence as to the facts concerning Dr.

Feeny's relationship to defendant. Therefore, the question of his agency became one of law.

Because of error in the instructions concerning Mr. Ketley and Dr. Feeny the judgment must be reversed.

(c) *Dining Car Steward.*

■ The court left to the jury the determination of whether Ketley was an agent of defendant. This was error. It is undisputed that the dining car steward is the proper agent of defendant for observing and passing on information pertaining to the physical condition of the dining car employees. It was undisputedly his duty to report all illness and arrange for medical treatment. Thus, as a matter of law Ketley was the agent of the company and the court should have so instructed instead of leaving the determination of his agency to the jury. The claimed negligence of Ketley was his failure to report either to the assistant manager or the doctor what plaintiff contends was the apparent serious condition of decedent.

(d) *The Hotel Clerk.*

Plaintiff, relying on *Carney* v. *Pittsburgh & Lake Erie R. Co., supra,* contends that the hotel clerk was an agent of defendant and required to report Mangrum's condition. In *Carney,* as we have hereinbefore stated, the Y.M.C.A. was authorized to furnish a room to the railroad employee. The bed they furnished was defective and caused the employee a back injury. The federal court held that furnishing room and board to its employees while away on business for the railroad was an operational activity of the company. The railroad could be liable for the Y.M.C.A.'s lack of care in providing a place to sleep. This case has no application to a hotel clerk who observes a sick employee of the railroad company and fails to pass on that information or take affirmative steps to help him. If there was any agency at all it would relate solely to the lodging which the clerk and the hotel provided.

There is considerable difference between an injury caused by active negligence of a hotel contracted by the railroad to provide a room for its employees, as to which room the hotel is under a duty to provide safe conditions, and the passive failure of a hotel clerk to report the illness of an employee of the railroad who knows that it is his own duty to report his illness, and whose fellow employees seem to be aware of his condition. ■ The duty of the hotel and its employees

for the nonperformance of which defendant would be liable is only to exercise due care not to injure railroad employees committed to their care. Certainly it cannot be said as a matter of law that the hotel clerk was under any duty under the circumstances to report decedent's condition and therefore was an agent of defendant in this respect. It may be that in leaving this question to the jury, plaintiff received more than that to which she was entitled.

### 3. *Limitation of Testimony.*

■ The deposition of Ruth M. Powell, the desk clerk at the King Hotel, was read in evidence and Edmond King, Jr., a fellow employee of Mangrum testified. Basically what they said was that they had observed Mangrum's condition at the hotel before he had entrained and that they thought he was too sick to go out on the train. The testimony was allowed but limited to the purpose of showing Mangrum's condition prior to, and at the time he went on duty, or if he was on duty what his mental and physical condition was. Plaintiff contends that it should have been admitted to show negligence in the hotel clerk and Mangrum's fellow employees in not notifying defendant before Mangrum entrained, to provide medical care for him. The trial court limited it because the court did not feel that the railroad company was under any duty to furnish Mangrum with medical care while he was off duty in Los Angeles on the "lay over." The facts show that Mangrum was required to notify the hospital association if he wished medical care.[5] The hotel clerk and his fellow employees had no duty to care for him at that time.

Plaintiff was asked to and could not show any cases which imposed a duty on Mangrum's fellow employees or the hotel clerk under the circumstances to furnish Mangrum with medical care or to take action on his behalf. There being no duty imposed on these people no evidence was admissible to show a breach of duty, which duty did not exist.

■ Where evidence is received for a restrictive purpose, the party against whom it is offered is entitled to a limiting instruction showing the specific reason for which it is admitted. (See 2 Witkin, Cal. Procedure, § 67(i), p. 1798, citing cases.)

---

[5]Under the Federal Employers' Liability Act a plaintiff whose negligence has contributed to his own injury or who is in part the proximate cause of his own injury, will not be defeated from recovery but such contributory fault is only used to reduce the amount of damages he would be entitled to recover. (35 Stat. 66, 45 U.S.C. 53.)

As the case will probably be retried, we point out that this evidence could have been relevant to show the other waiter's knowledge of Mangrum's condition when he boarded the train to be considered on the question as to whether decedent's condition on the train was "serious enough" to place a duty on the employees of reporting it. Defendant's assistant manager having testified that if it appeared that decedent on the train did not know where he was or his condition was serious enough, it would be the waiter's duty to report the condition to the steward. No request was made that this evidence could be considered by the jury for this purpose. Undoubtedly, had the request been made the court would have instructed accordingly.

There was no error in limiting the evidence merely to show Mangrum's mental and physical condition.

Judgment reversed.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied December 22, 1965.