**Helen SCHROEDER, Administrator of the Estate of Ralph C. Schroeder, Deceased, Plaintiff-Appellant,**

**v.**

**The PENNSYLVANIA RAILROAD COMPANY, a Pennsylvania Corporation, Defendant-Appellee.**

**The PENNSYLVANIA RAILROAD COMPANY, a corporation, Third-Party, Plaintiff-Appellant,**

**v.**

**The WILLETT COMPANY, a corporation, Third-Party, Defendant-Appellee.**

**Nos. 16197, 16199.**

United States Court of Appeals Seventh Circuit.

June 18, 1968.

Rehearing Denied July 18, 1968.

Charles J. Reed, Chicago, Ill., for plaintiff-appellant.

Baker & McKenzie, Chicago, Ill., for third party defendant-appellee, Francis D. Morrissey, Thomas F. Tobin, Chicago, Ill., of counsel.

Cornelius P. Callahan, Chicago, Ill., for Pennsylvania R.R. Co.

Before KNOCH, Senior Circuit Judge, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

### No. 16197

Helen Schroeder, administrator of the estate of her deceased husband, Ralph C. Schroeder, instituted an action against The Pennsylvania Railroad Company to recover damages on behalf of herself and her two minor children resulting from the death of her husband. The original complaint, as amended, sought recovery under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. The court allowed the issue of liability to be tried separately, thereby postponing a trial on the issue of damages. The jury returned a verdict of not guilty in favor

of the railroad. In this appeal, the plaintiff urges that the district court erred in admitting certain evidence and in refusing to give certain requested instructions.

Pursuant to a contract between The Willett Company, a Chicago-based trucking company, and the Pennsylvania Railroad, Willett performed certain pickup and delivery services in connection with the railroad's piggyback operation at the railroad's terminal in Chicago. The pickup services required Willett employees to load railroad customer's merchandise in trailers controlled by the railroad and bring the trailers to the railroad's terminal. Once the trailers were at the terminal, they were secured on railroad flatcars which were to be forwarded to other designations.[1] Willett employees also engaged in the delivery of trailers arriving at the railroad's terminal to railroad customers.

Ralph C. Schroeder was employed by Willett as a truck driver engaged in pickup and delivery service at the Pennsylvania piggyback terminal. On October 27, 1964 he was directed by a railroad employee to hook up an empty trailer to his tractor in order to pick up some merchandise. At the same time, another Willett Company employee, Pat Fiorito, engaged in "tie-down operations," was directed to hook up an empty trailer bearing Pennsylvania Railroad markings and to load it on a railroad flatcar. The two trailers were parked back to back, as were approximately three hundred others, in a storage area for empty trailers. In that area, there were no dividers or backstops against which the trailers were parked. Likewise there was no established distance between the trailers parked back to back. As Fiorito was lining up his tractor with the empty trailer, he bumped into the trailer causing it to move backward slightly, thereby crushing Schroeder who was standing between the two trailers.

As a result of the injuries he sustained, Schroeder died several weeks later.

Prior to the trial, the railroad moved for summary judgment on the ground, among others, that the FELA was not "properly invoked" in that Schroeder "was not employed by * * * The Pennsylvania Railroad Company, and it exercised no direction or control over him. Plaintiff's decedent was employed by the Willett Company, a separate corporation." The court denied the motion. In addition, the railroad moved for a directed verdict at the close of the plaintiff's evidence and again at the conclusion of all the evidence on the ground, among others, that "there is no evidence in this record from which the jury may infer that the plaintiff is entitled to invoke the provisions of the Federal Employers' Liability Act." Both motions were denied.

Before this court, the railroad argues that the district court should have granted its motion for a directed verdict. In support of its contention, the railroad cites Turpin v. Chicago, Burlington & Quincy Railroad, 403 S.W.2d 233 (Mo.), cert. denied, 384 U.S. 1003, 86 S.Ct. 1925, 16 L.Ed.2d 1015 (1966); Fawcett v. Missouri Pacific Railroad, 242 F.Supp. 675 (W.D.La.), aff'd 347 F.2d 233 (5th Cir.), cert. denied, 382 U.S. 907, 86 S. Ct. 242, 15 L.Ed.2d 159 (1965); Waters v. Chicago & Eastern Illinois Railroad, 86 Ill.App.2d 48, 229 N.E.2d 151 (1967). All three cases dealt with FELA actions which were brought because of the death of or injury to an employee of a trucking company engaged in activities relating to piggyback services offered by a railroad.

In *Waters*, the court affirmed the refusal of the trial judge to direct a verdict, after the jury had returned a verdict in the railroad's favor, that the injured plaintiff was not an "employee" of the railroad. The court did not believe that *Turpin* and *Fawcett* [2] compelled, as

---

1. The work of securing the trailers onto railroad flatcars was also done by Willett employees, known as "tie-down" men, pursuant to a contract between The Willett Company and Pennsylvania Truck Lines.

2. In Turpin v. Chicago, B. & Q. R.R., 403 S.W.2d 233 (Mo.), cert. denied, 384

a matter of law, the conclusion that employees of truckers doing piggyback work are not "employees" of a railroad within the meaning of the FELA. Instead, the court followed Baker v. Texas & Pacific Railroad, 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959). In *Baker*, the question arose whether an injured plaintiff working for an alleged independent contractor was an "employee" of the railroad within the meaning of the FELA. At issue before the Court was whether that question should be submitted to a jury or decided by the trial court as a matter of law. Holding that the issue was a proper one for the jury, the Court stated:

> It has been well said of the question that "[e]ach case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative. * * *" [W]e think it perfectly plain that the question [of employment], * * * contains factual elements such as to make it one for the jury * * *. 359 U.S. at 228, 79 S.Ct. at 665.

■ Considering the evidence adduced in the instant case in light of the Supreme Court's holding in *Baker*, we believe that the district court properly submitted to the jury the questions whether Willett was a true independent contractor and, in turn, whether Schroeder was an "employee" of the railroad within the meaning of the FELA. There was evidence that the railroad determined the specific trailers which Schroeder and other Willett drivers, engaged in pickup and delivery service, were to use in picking up goods to be shipped by piggyback. In addition, the evidence showed that the railroad would issue directions through its clerk to Willett drivers concerning the size of the trailer to be used and the time and manner of making the pickup. According to the testimony of a railroad clerk, if the Willett driver thought the trailer that was assigned to him was "dirty or wasn't fit for a load," he would report this fact to a railroad employee who would assign him a different trailer. There was also testimony that the railroad and not "The Willett Company would * * * have * * * knowledge" of the location of a particular trailer in the yard. According to the testimony of Willett employees, some of the work they did was inspected by railroad employees. Moreover, railroad employees inspected the trailers at the railroad's piggyback terminal.

■ The terms of the contract between the railroad and Willett also serve to illuminate whether Willett was a true independent contractor and whether Schroeder was an "employee" of the railroad within the meaning of the FELA. Although the contract denominated Willett an "independent contractor" and contained a disclaimer by the railroad that it had any authority to supervise or control Willett's work, "what a contract is styled by the parties does not determine its character or their legal relationship." Cimorelli v. New York Central Railroad, 148 F.2d 575, 578 (6th Cir. 1945). Under the contract, Willett was obligated to obtain insurance satisfactory to the railroad. Willett was forbidden from subletting the pickup and delivery work without the railroad's consent. The agreement was to continue for an indefinite period of time subject to the right of the parties to cancel on giving prescribed

U.S. 1003, 86 S.Ct. 1925, 16 L.Ed.2d 1015 (1966), the Missouri Supreme Court sustained the trial court's post-trial entry of a judgment for the railroad, after the jury returned a verdict for the plaintiff, because the evidence was not sufficient to establish that the plaintiff was an "employee" of the railroad. The court found that the trucking company was an independent contractor because the railroad's control over the details of the trucking company's work, as opposed to the results of that work, was insufficient. In Fawcett v. Missouri, Pac. R.R., 242 F.Supp. 675 (W.D. La.), aff'd, 347 F.2d 233 (5th Cir.), cert. denied, 382 U.S. 907, 86 S.Ct. 242, 15 L. Ed.2d 159 (1965), the district court granted summary judgment for the railroad, concluding that under no view of the facts was the deceased an "employee" of the railroad.

notice. These elements of the contract suggest the existence of a master-servant relationship between the railroad and Willett. RESTATEMENT (SECOND) OF AGENCY § 220 (1958).

In view of both the testimony concerning the control exercised by the railroad over the activities of Willett and the terms of the contract between the parties, we believe that there was a genuine factual issue as to whether Schroeder was an "employee" of the railroad within the meaning of the FELA.

■ Having determined that the district judge correctly refused to direct a verdict for the railroad on the question of liability, we now consider the plaintiff's claims of trial error. First, the plaintiff contends that the district court improperly permitted the introduction of evidence that she applied for and received workmen's compensation benefits as a result of her husband's death. Two Willett employees testified that the plaintiff had received workmen's compensation benefits. In addition, the secretary of the Illinois Industrial Commission was called as a witness by Willett to identify several documents relating to the application for and receipt of workmen's compensation benefits by the plaintiff. These documents were subsequently received in evidence. Mrs. Schroeder was called as a witness by Willett and examined extensively concerning the workmen's compensation proceeding. After her testimony, Willett's counsel read from her application and the arbitrator's award, including the amount of compensation to be paid to her pursuant to the award.

When Willett's counsel first sought to elicit testimony concerning the plaintiff's receipt of workmen's compensation benefits, he argued that this testimony was relevant as showing "whose employee Mr. Schroeder was at the time of this occurrence." Although the district judge initially sustained objections to this line of questioning, he subsequently permitted the witness to answer after a colloquy concerning Landreth v. Wabash Railroad, 153 F.2d 98 (7th Cir.), cert. denied, 328 U.S. 855, 66 S.Ct. 1345, 90 L.Ed. 1627 (1946). In that case, brought under the FELA to recover damages for personal injuries, we sustained the district court's refusal to strike a defense pleaded by the defendant. The defense referred to the rendition of a workmen's compensation award to the plaintiff. During the proceeding before the Industrial Commission, evidence and argument were directed to the issue whether the railroad was engaged in interstate or intrastate commerce. Under those circumstances, we held that the award of the Industrial Commission, which determined that the railroad was operating in intrastate commerce, could not be relitigated in a later proceeding involving the identical parties and raising the identical issue.

We do not believe that either the issue of whose "employee" Schroeder was or our holding in *Landreth* warranted the district judge's ruling, allowing evidence of the application for and receipt of workmen's compensation benefits by the plaintiff. First, there was never any question during the trial that Schroeder was employed "of record" by Willett.[3]

3. The following colloquy demonstrates this point:

Mr. Callahan [railroad's attorney]: Your Honor, again it is a question of the jurisdiction over this person and the distinction between an employee of the Pennsylvania and an employee of the Willett.

The Court: Will you reply to that explanation, Mr. Reed?

Mr. Reed [plaintiff's attorney]: Your Honor, we have not raised any dispute with the fact that Mr. Schroeder was an employee, with all of the attributes of an employee.

The Court: You are willing to concede that he was of record an employee of The Willett Company?

Mr. Reed: Yes.

The Court: It has never been contended here that he was directly in the employ of The Pennsylvania Railroad.

Mr. Reed: Never.

The Court: And that if he were, a member or had been a member of the union, of a union, that the check-off,

Moreover, several witnesses had testified that Schroeder was on the Willett payroll prior to the questions and answers concerning the workmen's compensation award.

Second, our holding in *Landreth* is inapplicable to the instant case, inasmuch as here the parties before the Industrial Commission and the district court were different, there was apparently no evidence relative to the commerce question presented before the Industrial Commission, and the Pennsylvania Railroad conceded that it was engaged in interstate commerce. As we recently stated in Mangan v. Broderick and Bascom Rope Co., 351 F.2d 24, 30 (7th Cir. 1965), cert. denied, 383 U.S. 926, 86 S.Ct. 930, 15 L. Ed.2d 846 (1966), holding that reversible error occurred in admitting evidence of the receipt of workmen's compensation benefits by a plaintiff in a personal injury action:

> Any slight value which such evidence might have * * * is far outweighed by the likelihood that such evidence will be misused by a jury. * * * Indeed, we can conceive of few instances in which the value of such evidence would merit the effort of its producement if the evidence did not at the same time advise the jury that the plaintiff had already collected some money for his injury. * * * [T]he "smell" of insurance or workmen's compensation must be presumed to affect a jury adversely to a plaintiff's cause.

We believe that the evidence concerning workmen's compensation had no relevance and served only to prejudice the jury against the plaintiff. For that reason, the district court erred in admitting such evidence. Tipton v. Socony Mobil Oil Co., Inc., 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963).

■ The plaintiff also contends that the district court erred in refusing to give two instructions she tendered. The first instruction concerned two federal regulations [4] which the plaintiff argued require all trailers to be equipped with operative brakes at all times.[5] As those regulations were interpreted in Kane v. Branch Motor Express Co., 290 F.2d 503 (2nd Cir. 1961), the requirement that trailers have operative brakes applies to parked trailers, such as the one which caused the injury to and the death of Schroeder. There was evidence that the tractor driven by Fiorito was equipped with a braking system that was incompatible with the braking system on the parked trailer which he bumped into.[6]

Although plaintiff's counsel cited both the *Kane* case and the relevant ICC regulations, the district court refused the instruction after counsel for the railroad cited McCarthy v. Pennsylvania Railroad, 156 F.2d 877 (7th Cir. 1946), cert. denied, 329 U.S. 812, 67 S.Ct. 635, 91 L.Ed. 693 (1947). On the basis of that case, counsel argued that a court was precluded from instructing "upon law that was not submitted to the jury or upon rules and regulations." Since we did not so hold in *McCarthy*, and since the tendered instruction was a proper statement of the law and was applicable to the evidence,

---

if there is a check-off in that union, was made by The Willett Company.

 Mr. Reed: Yes.
 The Court: You concede that?
 Mr. Reed: I concede that.
 The Court: There you have it.

4. 49 C.F.R. §§ 193.42, 193.48.

5. The tendered instruction read:
 You are instructed that at the time of the occurrence there was in force and effect a Federal regulation which provided that trailers used in interstate commerce shall have brakes operative at all times on all wheels.

If you find that the brakes on trailer PRR 420092 were not operative at the time of the injury to Ralph C. Schroeder and that such condition was the cause in whole or in part to the injury to Ralph C. Schroeder, then you will find the Railroad guilty of negligence.

6. There was also evidence that the trailer in question bore Pennsylvania Railroad markings. Although the railroad leased that trailer, it was not thereby relieved of its obligations to comply with applicable ICC safety regulations. 49 C.F.R. § 196.2.

the district judge erred in refusing to give the instruction.

 The second instruction tendered by the plaintiff stated that if the jury found Fiorito guilty of negligence in operating his tractor, and if his negligence caused Schroeder's injury, then the jury should find the railroad guilty of negligence.[7] In support of this instruction, the plaintiff relied on Sinkler v. Missouri Pacific Railroad, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). Under the FELA, a railroad is required to respond in damages for injuries to its "employees" resulting from the negligence of any "officers, agents, or employees of such carrier." The Supreme Court in *Sinkler* held that the term "agents" in the statute meant, "[W]hen a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA," 356 U.S. at 331, 332, 78 S.Ct. at 763. There is no dispute that either Willett or its employee Fiorito was engaged in performing operational activities of the railroad when he was attempting to hook up a trailer under the railroad's control preparatory to loading it on a railroad flatcar. As a consequence, he was an "agent" of the railroad within the meaning of the FELA. Sinkler v. Missouri Pacific Railroad, supra; Mangrum v. Union Pacific Railroad, 230 Cal.App.2d 960, 41 Cal. Rptr. 536, 16 A.L.R.3d 543 (Dt.Ct.App. 1964); Cf. Hopson v. Texaco, Inc., 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966).

 In declining to give this instruction, the district judge stated:

> This instruction is not proper. It presumes that Mr. Fiorito was an officer, agent or employee of the railroad. Since this is the statutory language of

liability, the instruction might seem to indicate to the jury that all persons such as Mr. Fiorito, who, according to the testimony, was on the Willett payroll—it might seem that all employees on the Willett payroll according to the testimony are employees of the railroad. That, Mr. Reed, is exactly the issue for the jury relative to the decedent.

This view mingled two distinct issues: (1) whether the decedent Schroeder was an "employee" of the railroad entitled to the protection of the FELA; (2) whether Fiorito was an "agent" of the railroad under the FELA whose negligence entitled an "employee" of the railroad injured thereby to be compensated by the railroad. Although the distinction between an injured "employee" and a negligent "agent" could lead to possible confusion, such a possibility did not warrant the district judge in refusing to give the tendered instruction with whatever elaboration or explanation he deemed necessary to eliminate any possibility of confusion in the jurors' minds. See United States v. 344.85 Acres of Land, 384 F.2d 789, 793 (7th Cir. 1967), (dissenting opinion).

Because of the errors of the district court in admitting the evidence of workmen's compensation benefits and in refusing to give the instructions tendered by the plaintiff, the judgment of the district court in No. 16197 is reversed, and the case is remanded for a new trial.

### No. 16199

After Helen Schroeder filed her complaint against the railroad in No. 16197, the railroad filed a third-party complaint against The Willett Company. The third-party action was premised on an agreement dated April 5, 1963 between the two parties that concededly covered precisely the type of work Schroeder was engaged in at the time he sustained the

---

7. The tendered instruction read:
You are instructed that if you find Pat Fiorito was negligent in the operation of his tractor and that his negligence was the cause in whole or in part of the injuries to Ralph C. Schroeder, you are instructed to find the Pennsylvania Railroad Company liable for such negligence.

injuries which led to his death.[8] Pursuant to a "save harmless" clause in the railroad's contract with Willett,[9] the railroad prayed that Willett:

> Protect, indemnify and save harmless said third party plaintiff [railroad] from all expenses, counsel fees, costs, liabilities, disbursements, recoveries, judgments and executions which may be sustained or incurred by reason of the complaint filed herein by the plaintiff, Helen Schroeder, Administrator of the estate of Ralph Charles Schroeder.

Before the trial commenced, Willett's motion to dismiss the railroad's third-party complaint was denied on the ground that even if the railroad was ultimately found to have negligently caused Schroeder's death, the terms of the contract between Willett and the railroad did not excuse the former from its duty of indemnification. At the close of the plaintiff's evidence and again at the close of all the evidence, the railroad moved for a directed verdict against Willett which was denied. When the district judge submitted the case to the jury, he charged:

> Now if you find The Pennsylvania Railroad Company not guilty, you will, of course, have no occasion to consider the guilt of the third-party defendant except that you must bring in a verdict to indicate what you do find.
>
> \* \* \* \* \* \*
>
> In order to entitle the railroad to recover under this contract, the railroad must prove by a preponderance of the evidence that the incident in question arose in connection with the Willett Company's business or operation as set out in Paragraph First, Subparagraph 3 of the contract.

The jury returned a verdict of not guilty in favor of the railroad in the main action and a verdict of not guilty in favor of Willett in the third-party action. The railroad's post-trial motion for judgment n. o. v. and to set the cause for proof of its damages as well as its motion for reconsideration were denied.

■ On the basis of the evidence presented at the trial, we believe the district court should have directed a verdict in favor of the railroad in its third-party action against Willett. There was no dispute that Schroeder was engaged at the time of his injuries in work "in connection with Trucker's business or operations" under the contract between Willett and the railroad. Moreover, the contract contemplated that Willett's obligation to indemnify the railroad extended to all "cost and expense" sustained by the railroad "in the event that an attempt should be made to hold Railroad liable." Thus the railroad's right to indemnification for its cost and expense was not dependent alone on the rendition of a judgment against the railroad in the main action but also on an *attempt* to hold the railroad liable. Schroeder's action constituted such an attempt.

The judgment of the district court in No. 16199 is reversed, and the case is remanded for a hearing to determine the "cost and expense" incurred by the railroad in defending the main action.

---

8. Howard L. Willett, president of The Willett Company, responded as follows to a question concerning Schroeder's employment:

> Q. Was Mr. Schroeder employed by the Willett Company under work governed by the contract [dated April 5, 1963] which is Plaintiff's Exhibit 1 in evidence?
>
> A. Yes.

9. Willett agreed in the contract as follows: To be responsible for, and to protect, save harmless and indemnify [the Pennsylvania] Railroad from and against, all fines, penalties, loss, damage, cost and expense suffered or sustained by Railroad or for which Raiload may be held or become liable by reason of \* \* \* (b) injury (including death) to persons or property, or other causes whatsoever, in the event an attempt should be made to hold Railroad liable therefore, in connection with Trucker's business or operations hereunder; \* \*' \*